HOOD, Judge.
James L. Prados instituted this suit against South Central Bell Telephone Company to recover the expenses which he incurred in removing concrete structures, shell and other improvements which defendant had placed on a lot of land now owned by plaintiff. The land had been leased to the Telephone Company by plaintiff’s author in title, and the above structures were placed on it while that lease was in effect and before plaintiff acquired the property. Judgment was rendered by the trial court in favor of plaintiff, and defendant appealed.
After the appeal was perfected, defendant filed in this court exceptions of no right and no cause of action.
The issues are: (1) Does plaintiff have a cause of action to compel defendant to restore the property to its former condition, although the lease from plaintiff’s author in title to defendant terminated prior to the time plaintiff purchased the property ? (2) Did plaintiff's author in title, as lessor, release the defendant from the obligation of restoring the leased property to the state it was in when defendant originally took possession as lessee?
In September, 1946, Mrs. Rose Prados, one of plaintiff’s ancestors in title, leased to defendant (then Southern Bell Telephone & Telegraph Company, Inc.) a lot of land in Opelousas, St. Landry Parish, for a primary term of five years, with the option of renewal for another five year period. The contract was in writing, and it provided that the leased premises were to be used as a warehouse and garage site, and that there “ . . . is to be erected a building for garaging company trucks and for warehousing facilities. It is understood and agreed that the Lessee shall have the privilege of removing this building any time they desire to do so.”
On September 23, 1954, Mrs. Rose Pra-dos entered into another contract with defendant, under the terms of which she leased the same property to the Telephone Company for a term of five years. That lease contract provided:
“This new lease includes our present ¿O' x 125' location now under lease. This lease will cancel and supersede in full our present lease dated September 4, 1946. It is understood and agreed that lessee will have the privilege of erecting buildings, sheds, fences, etc., and shall also have the privilege of removing same at the completion of this lease or renewals thereof. It is further agreed that lessor agrees to remove the small residence located on the additional portion of this plot of ground.”
James H. Prados acquired ownership of the property sometime prior to August 13, 1969. On that date he and South Central Bell Telephone Company entered into a lease contract, whereby Prados leased the above property to the Telephone Company for a term of two years, and he granted to the lessee the option of renewing the lease for two successive one year periods. The lease contained the following provision :
“ . . . This lease will cancel and supersede lease dated September 23, 1954 between Mrs. Rose Prados and Southern Bell Telephone and Telegraph Company. It is understood and agreed that Lessee will have the privilege of erecting buildings, sheds, fences, etc., and shall also have the privilege of removing same at the completion of this lease or renewals thereof, . . . ”
All of these lease contracts were duly recorded in the conveyance records of St. Landry Parish. The renewal options pro *389 vided in the last mentioned lease contract were exercised by defendant, but the parties agree that the lease was finally terminated on April 30, 1973.
On July 12, 1973, which was after the lease had been terminated, the widow of James H. Prados, deceased, sold the property affected by that lease to James L. Prados, the plaintiff in the instant suit. The act of sale provided that:
“ . . . she (Mrs. Ester Binford Prados) does by these presents, grant, bargain, sell, convey, transfer, assign and set over with full guarantee against all mortgages, liens, claims, evictions or other encumbrances or alienations whatsoever and with subrogations against all previous owners, and with full guarantee of title unto James L. Prados. . .”
After plaintiff acquired ownership of the property, he made demand on defendant to remove the concrete structures, shell and other improvements which the Telephone Company had placed on the property during the terms of the various leases it had held on the property. Defendant refused to comply with that demand, and plaintiff thereupon had the structures or improvements removed and the property restored to the condition it was in when the defendant originally took possession of it, as lessee. Plaintiff incurred expenses amounting to $5,338.20 in having the property restored to its former condition, and he instituted this suit to recover that amount from the Telephone Company.
The trial court rendered judgment in favor of plaintiff and against defendant for the full amount claimed. Defendant appealed.
Defendant contends primarily that plaintiff has no cause of action to recover from defendant the expenses which he incurred in restoring the property to its former condition. Its argument is that the contract of lease gives rise to rights and obligations which are personal to the parties thereto and to their heirs or assigns, that plaintiff is merely a third party purchaser of the property, that he was not a party to the lease, that he is not an heir of the lessor, that he is not an assignee of any rights which his vendor may have had under the lease, and that he thus cannot enforce the rights which were personal to his vendor. It contends that the act of sale by which plaintiff acquired this property did not convey to him any rights which his vendor may have had under the expired lease, that plaintiff acquired no rights of the lessor in any other way, and that plaintiff thus acquired the property as it was at the time of the sale, “concrete structures, shell and other debris included.”
Plaintiff contends, on the other hand, that the lease contract is a real obligation, as defined in LSA-C.C. art. 1997, and that all rights of the vendor-lessor passed with the land into the hands of the vendee when the property was sold. He takes the position that he now stands in the shoes of his vendor, and that he has the right to enforce any obligations which the lessee owed to the lessor under the lease contract.
. Although the contract of lease traditionally has been regarded by civilian writers as establishing only personal rights, the Louisiana Civil Code declares that predial leases “form real obligations.” And, Louisiana courts have consistently classified such leases as involving rights “ad rem.” See Yiannopoulos, Civil Law of Property, Vol. 1, Sec. 95, pp. 275-277.
The law is settled that a recorded lease constitutes an encumbrance upon the immovable property affected by it which follows the property into the hands of a purchaser. The purchaser of that immovable property thus acquires it subject to the terms of the lease, and he succeeds to the rights and corresponding duties of his vendor under such lease. LSA-C.C. arts. 1997, 2010, 2011, 2015, 2733; Port Arthur Towing Company v. Owens-Illinois, Inc., 352 F.Supp. 392 (D.C.1972); Walker v. Van Winkle, 8 Mart. (N.S.) 560 (1830).
The Louisiana Civil Code provides that an obligation is a “real obligation” when it *390 is attached to immovable property, and passes with it into whatever hands it may come. LSA-C.C. arts. 1997, 2010. The obligation and the right resulting from a contract relative to immovable property passes with the property. LSA-C.C. art. 2011. Article 2015 of the Civil Code provides, in part, that:
“Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer . ” (Emphasis added).
Our Civil Code thus makes it clear that the purchaser of property which is subject to a lease is bound by the terms of that lease. Article 2733 of that Code provides, pertinently, that:
“If the lessor sells the thing leased, the purchaser can not turn out the tenant before his lease has expired, unless the contrary has been stipulated in the contract.”
The source of that article was Article 1743 of the French Civil Code, which contained substantially the same language. Planiol, in commenting on the French Code article, said:
“According to Art. 1743, the purchaser of an immovable cannot evict the tenant whom he finds in possession. He must allow the lease to run its course. The obligations of his author fall upon him.” Planiol, Traite Elementaire De Droit Civil, Vol. 1, Part 2, No. 2800. (Emphasis added).
With reference to Article 1743 of the French Code, Professor Yiannopoulos comments :
“This article merely determines that the acquirer of a thing leased succeeds to the personal obligations contracted between lessor and lessee, assumes the position of the lessor, and is subrogated to his rights and duties. This is a legal obligation imposed for reasons of social and economic utility. . Yiannopou-los, Civil Law of Property, Vol. 1, Sec. 95 pp. 275-277.
Our Supreme Court stated in the early case of Walker v. Van Winkle, supra, that:
“ . . . According to the 2704th art. of the code (now LSA-C.C. art. 2733), the purchaser of the thing leased, takes the property subject to the lease, and bound by the contract of the original lessor. Being thus subject to all his obligations, it clearly follows, that the lessee is entitled to every remedy given to enforce the rights growing out of these obligations.”
The cited authorities convince us that plaintiff, as the purchaser of the leased property, acquired all of the rights and obligations of the lessor under that lease, even though the act of sale contained no specific assignment of the lease and there was no special reference to the lease in the deed.
 The fact that the term of the lease terminated before plaintiff acquired the property does not deprive the latter of his right to enforce the obligations which the lessee still owes to the lessor under that contract. Our law provides that the lessee is presumed to have received the thing in good order, and that he must return it in the same state, making the necessary allowance for wear and tear and for unavoidable accidents. LSA-C.C. arts. 2719 and 2720. Unless the lease contract provides otherwise, it is the duty of the lessee to deliver back the premises in the same condition in which they were received. Dietz v. Superior Oil Company, 252 So.2d 198 (La.App. 3 Cir. 1971). The lease contracts in the instant suit do not provide otherwise. We conclude, therefore, that defendant is obligated to restore the leased property to its former condition, *391 and that that obligation remains despite the fact that the term of the lease has expired, and that the other obligations of the lessee under the contract have terminated and have been satisfied.
Defendant cites Brignac v. Boisdore, 288 So.2d 31 (La.1974), and Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964), to support its argument that plaintiff has no cause of action' here. We distinguish both cases. In Brignac, the court held that the sub-lessee had no cause of action against the original lessor for reimbursement of the costs of repairs to the leased premises. The instant suit does not involve the right of a sub-lessee to recover from the lessor, the question here being whether the purchaser of the leased property acquires the rights and obligations of his vendor toward the lessee, and thus whether he may maintain an action against the lessee to enforce the lease contract. In Leonard, the lease contract contained a stipulation that the lessors would not “sell or lease all or any part of the adjoining property” owned by them to anyone who would engage in a competitive business. The court held that that provision did not create a real obligation upon the land itself, that whatever right the lessee had for breach of that obligation must be exercised against the lessors, and that the lessee thus had no cause of action for an injunction against the purchaser of the leased property. The obligation which plaintiff seeks to enforce in the instant suit, unlike that in Leonard, is a real obligation which runs with the land and it may be enforced against the lessee by the purchaser of the property.
The renewal lease executed by Mrs. Rose Prados on September 23, 1954, provided that the contract “will cancel and supersede” the lease which had been granted to the Telephone Company in 1946. And, the lease signed by James H. Prados on August 13, 1969, provided that it “will cancel and supersede” the 1954 lease. In each instance the parties obviously intended to extend and continue in effect, with some modifications, the leases which previously had been in effect giving the Telephone Company the right to use the leased premises. In view of that continuity, we believe that upon the final termination of the lease on April 30, 1973, defendant’s obligation under LSA-C.C. arts. 2719 and 2720 was to deliver back the leased property in the same state it was in when defendant took possession of it in 1946. No one would question, for instance, that upon the termination of the 1954 renewal lease (assuming that it was not renewed in 1969, as actually was done), Mrs. Rose Prados would have had the right to compel defendant to restore the property to its condition when the Telephone Company took possession in 1946. We think plaintiff now has the same right which Mrs. Rose Prados would have had then.
Our conclusion is that plaintiff has a right and a cause of action to recover from defendant the expenses he incurred in restoring the leased property to the state it was in when the defendant Telephone Company took possession of it in 1946. The exceptions of no right and no cause of action filed by defendant in this court thus will be overruled.
Defendant contends further that the lessor in each of the leases involved here agreed to and specifically authorized the construction of improvements on the leased premises by the lessee, and that plaintiff thus is precluded from demanding that the property be returned in the same state it was in when defendant originally took possession.
We pointed out earlier that the 1969 lease from James H. Prados, plaintiff’s author in title, to defendant provides that the “Lessee will have the privilege of erecting buildings, sheds, fences, etc.,” on' the leased property, and that it shall also have “the privilege of removing same at the completion of this lease or renewals thereof.” Each of the prior leases to defendant contained similar provisions. None of those contracts stipulated, however, that *392 the lessee was relieved of the obligation of returning the property to the lessor in its original state or condition.
Article 2726 of the Civil Code gives the lessee the right to remove the improvements it has made on the leased premises, provided that the lessor may retain the additions made with lime and cement on paying a fair price for them. It is probable, under the above quoted provisions of the lease contracts involved here, that the lessors have waived their right to retain the improvements made with lime and cement. We find nothing in those contracts, however, which constitutes a waiver of the lessor’s right to require that the property be returned in the state it was in at the beginning of the lease.
In Dietz v. Superior Oil Co., supra, where a similar issue was presented, we held that the lessee was obligated to deliver back the premises in the same condition in which they were received. In so holding, we said:
“. . . Unless the contract between the parties provides otherwise, it is the duty of the lessee to deliver back the premises in the same condition in which they were received.”

“ . . .If the parties had intended that the lessee should be allowed to leave or abandon any improvements or additions at the time the term or extended term of the lease terminated, this could have been specifically provided in the contract.”
The First Circuit Court of Appeal held, appropriately, in Taylor Lumber Company, Inc. v. Fuller, 292 So.2d 878 (La.App. 1 Cir. 1974), that:
“ . . . The jurisprudence likewise establishes that a lessee may not compel a lessor to accept improvements made with lime and cement, but that the option to retain rests solely with lessor who may either accept the improvement and pay its fair price or compel lessee to remove same from the leased premises.”
The case of Riggs v. Lawton, 231 La. 1019, 93 So.2d 543 (1957), relied on by defendant, is not applicable here. In that case the lessee sued the lessor to recover the sum spent by plaintiff in adding a room to the leased premises. The lessor answered and prayed that the lessee be ordered to remove the improvements. Our Supreme Court rejected the demands of both parties. With reference to the defendant’s prayer that the improvements be removed, the court noted that the lessor had assisted in constructing the room, had helped in selecting the materials, had approved the general plan of construction, and had paid some invoices from funds furnished by plaintiff. Under those circumstances, the court found that the lessor had “released her lessee of the obligation imposed by law of returning the premises in the same state in which he received them insofar as those improvements were concerned.”
No circumstances similar to those which existed in Riggs are present in the instant suit. Defendant here relies solely on the language contained in the lease contracts as the basis for its argument that plaintiff, and his ancestors in title, waived their right to require that the leased property be returned in its original condition.
We agree with the conclusion obviously reached by the trial judge that neither plaintiff nor his ancestors in title have waived their right to require that the property be returned in the state it was in when originally possessed by defendant, as provided in LSA-C.C. arts. 2719 and 2720. We thus find no error in the judgment of the trial court condemning defendant to pay the expenses incurred by plaintiff in restoring the property to its former condition.
For the reasons assigned, the exceptions of no right and no cause of action filed by the defendant-appellant in this court are overruled. The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.