329 So.2d 744 (1975)
James L. PRADOS
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY.
No. 56255.
Supreme Court of Louisiana.
November 3, 1975.
On Rehearing March 29, 1976.
*745 Edward B. Dubuisson, Dubuisson, Brinkhaus, Guglielmo & Dauzat, Opelousas, for defendant-applicant.
Felix A. Dejean, III, Opelousas, for plaintiff-respondent.
BOLIN, Justice.
The Court of Appeal affirmed a judgment of the trial court holding plaintiff, as owner of realty, could recover against defendant for the cost of removing improvements from the property under a provision of a predial lease entered into between plaintiff's ancestors in title and defendant. 309 So.2d 386 (La.App. 3rd Cir. 1975). For reasons hereinafter stated, we affirm.
The basic question presented is: can plaintiff enforce a provision contained in leases with plaintiff's ancestors in title, which provision obligated Bell to remove improvements on property now owned by plaintiff?
In September, 1946, Mrs. Rose Prados leased a lot of land to South Central Bell Telephone Company (then Southern Bell Telephone & Telegraph Company, Inc.) for five years, with an option to renew for another five years. The lease provided defendant could erect a building and would have the "privilege of removing this building any time they desire to do so." Another similar lease was executed by the same parties in 1954, providing that its terms were to cancel and supersede the 1946 lease. The 1954 contract also included the following:
"* * * It is understood and agreed that lessee will have the privilege of erecting buildings, sheds, fences, etc., and shall also have the privilege of removing same at the completion of this lease or renewals thereof. * * *" (Emphasis supplied.)
Sometime later, James H. Prados acquired the property in question, and on August 13, 1969, he contracted to lease the property to Bell for a term of two years with two options to renew the lease for successive one-year periods. The instrument contained substantially the same stipulations *746 regarding construction and removal of improvements as were contained in the 1954 contract.
All of the above contracts were recorded in the conveyance records. The renewal options in the 1969 contract were exercised by Bell, and the parties agreed to terminate the lease on April 30, 1973.
Several months thereafter, on July 12, 1973, the widow of James H. Prados sold the property to James L. Prados. After acquiring title to the property James L. demanded that Bell remove the concrete structures, shall and other improvements which it had placed on the property during its terms as lessee. When Bell refused, James L. Prados had the improvements removed and the property restored to its condition before the Bell leases began. The restoration cost plaintiff $5,338.20, and he instituted this suit against Bell to recover that amount.
It is not readily apparent from the language of the 1954 and 1969 leases why defendant was obligated to remove any improvements it placed on the property. However, it becomes clear by analyzing the terms of the contracts in light of provisions of our Civil Code that defendant was so obligated. La.Civil Code articles 2719 and 2720 establish the obligation of the lessee to restore leased property to its original condition:
"If an inventory has been made of the premises in which the situation, at the time of the lease, has been stated, it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him, making, however, the necessary allowance for wear and tear and for unavoidable accidents." La.C.C. art. 2719.
"If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions contained in the preceding article." La.C.C. art. 2720.
Article 2726 bestows upon the lessee the privilege of removing the improvements placed upon the premises, but also provides that if the improvements are made with lime and cement, the lessor has the option of retaining them upon paying a fair price.
The contract language in the present case allowed Bell, the lessee, the privilege of removing all improvements made on the property. We interpret that provision as a reservation by Bell of the right to remove all the improvements (regardless of whether they were made with lime and cement) and a forfeiture by the lessor of his option to retain the additions upon paying a fair price for them. We also find this contractual stipulation did not modify the obligation imposed by the Code upon the lessee to restore the premises to their original condition by removing the improvements at the end of the lease.
Bell argues that the lessor acquiesced in the construction of the improvements upon the premises and he thereby waived his statutory right to demand that the leased premises be restored at the termination of the lease to their prior condition. Bell maintains that the lease provision affording the lessee the right to construct certain improvements represents a forfeiture by the lessor of this right to demand restoration.
We find no merit in defendant's contention. Waiver of the right to have the premises restored to their original condition cannot be inferred from an agreement allowing construction of improvements during the term of the lease. To the contrary, such a stipulation merely prevents the lessor from asserting during the term of the lease that the lessee has breached his contract by constructing unauthorized additions on the property. The case cited by defendant in support of his position on this point is inapposite. In Riggs v. Lawton, 231 La. 1019, 93 So.2d 543 (1957), this Court inferred from all the circumstances that the lessor had *747 agreed to allow the lessee at the termination of the lease to leave the constructions he had placed on the property. We find no circumstances in this case indicating such a waiver by the lessor. We agree with the conclusion reached under similar circumstances in Dietz v. Superior Oil Co., 252 So.2d 198 (La.App. 3rd Cir. 1971):
"* * * If the parties had intended that the lessee should be allowed to leave or abandon any improvements or additions at the time the term or extended term of the lease terminated, this could have been specifically provided in the contract." 252 So.2d at 200. Having determined Bell was obligated under its lease with plaintiff's ancestors in title to remove the improvements it had placed on the leased property, we must determine whether plaintiff could assert this right to compel removal. Bell argues that the contract of lease creates only personal rights and obligations which may be asserted only by the original lessor. Plaintiff, on the other hand, maintains that a recorded lease creates real rights and obligations which follow the property. Therefore, both parties ask us to classify rights and obligations under a lease contract as real or personal, and then to conclude therefrom whether a landowner may require that a lessee of his ancestor in title remove improvements placed on the property during the lease.
The Louisiana concept of a real right is not entirely clear, and it seems to differ materially from the French and the Roman.[1] There is considerable confusion among the French commentators whether a predial lease creates real or personal rights.[2] The Louisiana jurisprudence does not always conform to our legislation on the subject,[3] and the legislation itself is not entirely consistent.[4] It appears that the rights and obligations created by the contract of lease are hybrids, and whether those interests should be treated as personal or real will depend on what rights are being asserted and what obligations are sought to be enforced.[5]
Thus, we feel that to solve the issue presented by this case, rather than resorting to any broad determination of the nature of the interests flowing from a lease, we must examine the specific directives of our Civil Code on the effect of a sale of property upon the rights and obligations of the land's lessor and lessee.
"If the lessor sells the thing leased, the purchaser can not turn out the tenant before his lease has expired, unless the contrary has been stipulated in the contract." La.C.C. art. 2733.
"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances *748 permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or bona fide purchaser." La.C.C. art. 2015. (Emphasis supplied.)
"Heritable obligations and stipulations give to and impose upon heirs, assigns, and other representatives, the same duties and rights that the original parties had and were liable to, except that beneficiary heirs can only be liable to the amount of the succession." La.C.C. art. 2008.
"All rights, acquired by a heritable obligation, may be assigned; this assignment may be made, expressly by contract granting such right, or impliedly by the conveyance of the property to which they are attached." La.C.C. art. 2009.
"Not only the obligation, but the right resulting from a contract relative to immovable property, passes with the property. Thus the right of servitude in favor of immovable property, passes with it, and thus also the heir or other acquirer will have the right to enforce a contract made for the improvement of the property by the person from whom he acquired it." La.C.C. art. 2011. (Emphasis supplied.)
As applied to the instant case we find these provisions mandate that the duties and privileges imposed by the recorded contract of lease bind the owner of the property and the lessee after the sale of the property to a third party. Thus, every unexecuted provision in the lease between James H. Prados and Bell was binding upon Bell and James L. Prados, after the latter became owner of the property.
Moreover, the obligation sought to be enforced in this suit is not merely one which arises from the will of the parties to the lease. The obligation to restore the premises is imposed by positive provisions of our Civil Code from which the parties have not derogated by the terms of their contract. Thus, defendant Bell was obligated to remove the improvements it had constructed on the property. Failing to remove these improvements, it owes plaintiff for his costs in restoring the land to its prior condition.
For the reasons assigned, the judgments of the trial court and the court of appeal are affirmed. South Central Bell Telephone Company is assessed with costs of this Court.
CALOGERO, J., concurs.
DIXON, J., dissents.

ON REHEARING
SANDERS, Chief Justice.
We granted a rehearing in this case because of defendant's persuasive contentions and the importance of the decision to the properly law of this State.
The facts may be briefly summarized. Mrs. Rose Prados leased a lot of land in Opelousas to South Central Bell Telephone Company. In 1969, James H. Prados acquired ownership of the property and executed a new lease in favor of the same lessee. The lease contracts were duly recorded. Both leases provided:
"It is understood and agreed that lessee will have the privilege of erecting buildings, sheds, fences, etc., and shall also have the privilege of removing same at the completion of this lease or renewals thereof."
The lease terminated on April 30, 1973. Several months later, on July 12, 1973, Mrs. Ester Binford Prados, the widow of James H. Prados, sold the property to James L. Prados.
*749 After acquiring the property, James L. Prados demanded that Bell remove "the concrete structures, shell and other debris" placed on the property during the term of the lease. When Bell refused, Prados had the property cleared. He then brought this suit against Bell for damages, representing the cost of clearing the lot.
The question presented is one of law: can the present owner recover damages based upon a breach of the former lessee's obligation to restore the property at the termination of the lease in the same state as that in which the lessee received it?
Plaintiff contends that the lessor's right to require the premises to be cleared attached to the property and passed to him by virtue of the sale. He relies principally upon Louisiana Civil Code Articles 2011, 2015, and 2733.
Defendant asserts that the lease right to have the property returned in the same state is a personal right, accruing to the lessor upon the termination of the lease; that plaintiff took the property as he found it at the time of the conveyance; and that the personal right to damages was not assigned in the sale.
In recent years, we have consistently classified predial leases as involving personal rights, rather than real rights. See Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964); Harwood Oil and Mining Co. v. Black, 240 La. 641, 124 So.2d 764 (1960); A. Yiannopoulos, Louisiana Civil Law TreatiseProperty, § 95, pp. 275-278 (1967). When, however, the lessor sells property during the term of a recorded lease, the purchaser in the absence of a contrary stipulation is bound by the obligations of the lessor. LSA-C.C. Arts. 2015, 2733; Spence v. Lucas, 138 La. 763, 70 So. 796 (1915); Walker v. Van Winkler, 8 Mart. (N.S.) 560 (1830). In the absence of a contrary stipulation, the new owner is likewise entitled to the rent accruing subsequent to his acquisition, LSA-C.C. Arts. 1902, 2461, 2490; Carmouche v. Jung, 157 La. 441, 102 So. 518 (1924); Lesseigne v. Cedar Grove Realty Co., 150 La. 641, 91 So. 136 (1921); 29 La.L.Rev. 107.
The present lease had expired before plaintiff's acquisition of the property. The seller conveyed the property free of any lease. Hence, we now discern that on original hearing we erroneously applied Louisiana Civil Code Articles 2733, 2015, and 2011, dealing with the effect of a conveyance upon an existing lease.
In our opinion, the question of liability must be resolved in the light of the rules governing the assignment and subrogation of rights. The controlling provisions of the Louisiana Civil Code are Articles 2009, 2461, and 2490. These articles provide:
Article 2009:
"All rights, acquired by a heritable obligation, may be assigned [and transferred]; this assignment may be made, expressly by contract granting such right, or impliedly by the conveyance of the property to which they are attached."
Article 2461:
"The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary."
Article 2490:
"The obligation of delivering the thing includes the accessories and dependencies, without which it would be of no value or service, and likewise everything that has been designed to its perpetual use."
The act of sale stipulates:
". . . she [Mrs. Ester Binford Prados] does by these presents, grant, bargain, sell, convey, transfer, assign and set over with full guarantee against all mortgages, liens, claims, evictions, or other encumbrances or alienations whatsoever *750 and with subrogations to all her rights and actions of warranty against all previous owners, and with full guarantee of title, unto JAMES L. PRADOS. . ."

The conveyance and subrogation clauses make no reference to the expired lease, nor to the right of the seller to a restoration of the property to its original state, nor to the right of damages. The subrogation clause is directed to the rights and actions of warranty against previous owners. Hence, we readily conclude that there was no express assignment within the meaning of Article 2009. If a cession of the contested right occurred, it must be found in the accessorial inclusion, or tacit assignment, provided in the articles.
Article 2461 is a restatement of Article 2490. Article 2009 sets forth the methods of assigning heritable rights, one of which is an implied assignment from the conveyance of the property to which the rights are attached.
Article 2490 provides that the conveyance of land includes the "accessories and dependencies." This article derives from Article 1615 of the French Civil Code of 1804. In the sale of immovable property, accessories include immovables by destination and predial servitudes in favor of the property conveyed. See Bagley v. Rose Hill Sugar Co., 111 La. 249, 35 So. 539 (1903); Smith v. Bell, 224 La. 1, 68 So.2d 737 (1953); LaFleur v. Foret, La.App., 213 So.2d 141 (1968); T. Huc, Commentaire Du Code Civil, Vol. 10, p. 121 (1897). Under the article, however, accesories do not include personal rights of the seller. Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (1941); Clark v. Warner & Co., 6 La.Ann. 408 (1851); M. Planiol et G. Ripert, Traite Pratique De Driot Civil Francais, Vol. 10, Sect. 87, pp. 89-90 (2d ed. 1956).
In 10 Traite Pratique De Droit Civil Francais, supra, Sect. 87 at p. 89, Planiol and Ripert state:
"Personal rights belonging to the seller can never be considered as accessories of the immovable sold." [1]
Thus, even when property is conveyed during the term of an existing lease, the purchaser cannot recover from the lessee rent that had accrued prior to the sale. Carmouche v. Jung, supra; Lesseigne v. Cedar Grove Realty Co., supra; Matthews v. Alsworth, 45 La.Ann. 465, 12 So. 518 (1893); 29 La.L.Rev. 107. Likewise, a purchaser cannot recover from a third party for damage to the property incurred prior to the sale. Gumbel v. New Orleans Terminal Co., supra; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (1910); McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42 (1907); Bradford v. Richard, et al., 46 La.Ann. 1530, 16 So. 487 (1894); Clark v. Warner & Co., supra.
Even during the term of a lease, a purchaser of immovable property acquires no right to recover from the lessee for property damage sustained before the sale. Matthews v. Alsworth, supra; Aubry & Rau, Droit Civil Francais, An English Translation by the Louisiana State Law Institute, Vol. 2, § 176, p. 76 (7th ed. 1961).
In Matthews v. Alsworth, supra, the lessor sold the property during the term of the lease. The act of sale contained the following assignment: "Said lease and all the aforesaid conveyors' rights in, to, or under the same are transferred hereby. . . to the conveyee herein."
In holding that the purchaser could not recover from the lessee property damages incurred prior to the sale, this Court stated:
"Ordinarily the sale of a thing will pass all such things as are directly incident to it, and necessary to its enjoyment. *751 Civil Code, art. 2461. The lessee is liable on the covenants of his lease, and to these, unquestionably, plaintiff is subrogated from the date of his purchase. By the use of the words `right in, to, or under the lease,' the plaintiff did not become an assignee of damages of date prior to the sale . . . . It was not an accessory right, which passed like a right of servitude, for instance, without description of, or reference to, the claims. The property transferred is described. We cannot presume that there were additional rights in the nature of damages, the deed being silent as to damages."
The general principle, we think, is that a buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sales price. See LSA-C.C. Art. 2521; Aubry & Rau, Droit Civil Francais, supra, p.76 (f. n. 6).
The rationale of the foregoing decisions applies more strongly to the present case. Here, as we have noted, the conveyance was made after the termination of the lease. The property passed to the buyer unencumbered. The right to damages accrued to the lessor prior to the sale. It was a personal right, as distinguished from a real right. Under no sound theory can it be considered as attached to or accessory to the immovable property. Hence, in the conveyance, the plaintiff received no assignment of the right.
We hold that the present owner has no right to recover damages against the former lessee.
For the reasons assigned, the judgment of the Court of Appeal is reversed and plaintiff's suit is dismissed at his costs.
SUMMERS, J., dissents and adheres to the Court's original opinion and joins the dissent of TATE, J.
TATE, J., dissents and assigns reasons.
TATE, Justice (dissenting).
The writer respectfully dissents from the scholarly majority opinion. The writer adheres to the equally scholarly opinion rendered by a majority on original hearing. In my opinion, as we originally held, the former tenant's obligation to remove the improvements is a real obligation enforceable by the present owner of the premises.
To recapitulate briefly, the civil code provides that the lessee (South Central Bell) is under an obligation to remove improvements placed on the premises during the lease period, but the lessor (Mrs. Prados) has the option to retain them upon paying the lessee a fair price. Article 2726. By the recorded lease, the tenant was given the privilege of removing the improvements at the termination of the lease (thus contractually depriving the landlord of her code option of retaining the improvements upon paying a price therefor).
After termination of the lease, the property was sold. The purchaser (the plaintiff) from the landlord demanded that the tenant (South Central Bell) remove the concrete structures on the premises. This suit is to enforce the tenant's obligation to remove the "improvements" (which, in actual fact, detracted from the value of the premises).
The majority on rehearing holds that the obligation was a personal obligation which was enforceable only by the original landlord, not by the landlord's successor in title. For the reasons assigned by our original opinion, I adhere to our original conclusion that the present is a real obligation enforceable by the current owner of the property. (An ordinary lease contract includes both real and personal rights and obligations, as we held on originally; I do not read the opinion on rehearing as necessarily disputing this well-settled principle.)
*752 The correctness of our original conclusion, it seems to me, is more readily seen if we consider two other postures in which enforcement of this same right-obligation to remove or retain the improvements made by the tenant might have arisen:
1) If the tenant South Central Bell had sought to force the purchaser (the plaintiff Prados) to accord it its real right under the civil code and the lease to remove the improvements, it seems certain to me that Prados could not have resisted South Central Bell's demand by urging that the obligation was personal to his vendor (the original lessor) and only enforceable against her. The present owner of the land would have been obligated by the code article, in view of the recorded lease, to permit the former tenant to remove its improvements; or
2) If in fact the lessor (Mrs. Prados) instead of her purchaser (her son, the plaintiff) had sought to enforce the obligation against the tenant for it to remove its improvements, then it seems to me the courts would have held that the former owner had no interest in restoring the premises to their condition when originally leased. Implicit in such a holding is the recognition that only the current owner of the land has the right to enforce the obligation.
In the absence of any evidence that any owner of the land intended to release South Central Bell from its admitted obligation to remove the "improvements" from the land, I am unable to see how this obligation was extinguished, nor why the present owner should not have the right to enforce it.
Such unextinguished obligation is owed to the owner of the land by reason of the code article, not to anyone else by reason of any obligation of a personal nature arising out of a contract.
I therefore respectfully dissent, believing that the trial court, the court of appeal, and our original majority were all correct in their holding that the real obligation here in question may be enforced by the present owner of the land.
NOTES
[1] Comment, 21 La.L.Rev. 462 (1961); Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958); 2 A. Yiannopoulos, Civil Law Property, § 84 (1966).
[2] 1 M. Planiol, Traite Elementaire de Droit Civil, § 2165 (La.St.L.Inst. transl. 1959); Cass., 6 March 1861, D. 61.1.418, S. 61.1.713; 2 A. Yiannopoulos, Civil Law Property, § 87 (1966); 1 Troplong. De l'echange et du louage 60 (1859).
[3] Comment, 21 La.L.Rev. 462 (1961). Compare La.C.C. art. 2015, 2010, and 2011 to Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958); Gulf Refining Co. of La. v. Glassell, 186 La. 190, 171 So. 846 (1936); Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); Weber v. H. G. Hill Stores, Inc., 207 La. 500, 21 So.2d 510 (1945).
[4] Compare La.C.C. arts. 2015, 2010, 2011 to La.C.C.P. art. 3656.
[5] Real rights follow property and can be asserted against anyone. In Louisiana, a recorded lease is effective against a third party purchaser, but a lessee cannot bring a possessory or petitory action to enforce his right to possession. See 2 A. Yiannopoulos, Civil Law Property, § 84 (1966).
[1] "Des droits personnels appartenant au vendeur ne peuvent jamais etre considere somme des accessoires de l'immeuble vendu."