# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 17-649

**CATAHOULA LAKE INVESTMENTS, LLC**

**VERSUS**

**HUNT OIL COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

ON SUPERVISORY WRIT FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 40076
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**PHYLLIS M. KEATY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**
**JUDGMENT REVERSED IN PART AND RENDERED.**

**Gladstone N. Jones, III**
**Bernard E. Boudreaux, Jr.**
**Kevin E. Huddell**
**Eberhard D. Garrison**
**H. S. Bartlett, III**
**Emma Elizabeth Daschbach**
**John T. Arnold**
**Lindsay E. Reeves**
**Jones, Swanson, Huddell & Garrison, LLC**
**601 Poydras Street, Suite 2655**
**New Orleans, Louisiana  70130**
**(504) 523-2500**
**Counsel for Plaintiff/Relator:**
      **Catahoula Lake Investments, LLC**

**Jennifer Jones**
**Jones Law Firm**
**Post Office Box 1550**
**Cameron, Louisiana  70631**
**(337) 775-5714**
**Counsel for Plaintiff/Relator:**
      **Catahoula Lake Investments, LLC**

**William Michael Adams**
**Paul M. Adkins**
**Stacey Denise Williams**
**Brian C. Flanagan**
**Blanchard, Walker, O'Quin**
**P. O. Drawer 1126**
**Shreveport, LA 71163-1126**
**(318) 221-6858**
**Counsel for Defendant/Respondent:**
      **Petro-Hunt, LLC**

**Jamie D. Rhymes**
**April L. Rolen-Ogden**
**Hunter A. Chauvin**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, Louisiana  70505-2008**
**(337) 232-7424**
**Counsel for Defendant/Respondent:**
      **XH, LLC**

**Joseph I. Giarrusso, III**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana 70139**
**(504) 581-7979**
**Counsel for Defendant/Respondent:**
      **XH, LLC**

**Michael P. Cash**
**Liskow & Lewis**
**1001 Fannin Street, Suite 1800**
**Houston, Texas 77002**
**(713) 651-2900**
**Counsel for Defendant/Respondent:**
**XH, LLC**

**Matthew Joseph Randazzo, III**
**Christopher B. Bailey**
**Charles W. Montz, Jr.**
**Jackson D. Logan, III**
**Randazzo, Giglio & Bailey, LLC**
**P. O. Box 51347**
**Lafayette, LA 70505**
**(337) 291-4900**
**Counsel for Defendant/Respondent:**
**Kingfisher Resources, Inc.**

**KEATY, Judge.**

Plaintiff-Relator, Catahoula Lake Investments, LLC, seeks supervisory writs from a judgment which granted, in part, an exception of no right of action filed by Defendants-Respondents, XH, LLC; Kingfisher Resources, Inc.; and Petro-Hunt, L.L.C. In Docket Number 17-651 with this court, Defendants-Relators, XH, LLC; Kingfisher Resources, Inc.; and Petro-Hunt, L.L.C., seek supervisory writs from the same judgment which denied, in part, their exception of no right of action.

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed suit against Defendants claiming that their operations on Plaintiff's property under mineral leases and a mineral servitude caused damage to the property. Defendants filed exceptions of no right of action, asserting that because all mineral operations had ceased prior to Plaintiff's purchase of the subject property,[1] the subsequent purchaser doctrine[2] prohibited Plaintiff from recovering against Defendants since Plaintiff's contract purchasing the property did not expressly pass the seller's personal rights of action to Plaintiff. The trial court granted the exception of no right of action in part, stating:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Exceptions of No Right of Action filed by Defendants are hereby **GRANTED IN PART** and **DENIED IN PART**. In particular, those exceptions are **GRANTED** as to the pre-acquisition damages claims made against Defendants by the Plaintiff, and those claims are dismissed. Defendants' exceptions are **DENIED** as to plaintiff's post-purchase claims for regulatory mediation pursuant to Louisiana Revised Statute[s] 30:29 (Act 312).

---

[1] In its written reasons for ruling, the trial court noted that "the parties stipulated for purposes of the hearing on the exceptions, that all oil and gas activity ceased on the property in question no later than 1992, when CLI's predecessor in title owned the property."

[2] The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289, p. 8 (La. 10/25/11), 79 So.3d 246, 256-57.

Ordinarily, we would deny Plaintiff's writ application as the judgment at issue dismisses portions of Plaintiff's claims and, therefore, falls under La.Code Civ.P. art. 1915(B). As such, Plaintiff could obtain review of the judgment by having the trial court designate the partial judgment as final and immediately appealable. However, in this instance, Defendant has filed a writ application seeking the granting of the remainder of their exception of no right of action. Plaintiff's opposition to Defendants' writ application is based on the same arguments made in support of Plaintiff's writ application. Thus, in ruling on Defendant's properly-filed writ application, we will necessarily need to address whether Plaintiff's arguments are meritorious. Therefore, judicial efficiency mediates toward considering the merits of both writ applications at this time.

## STANDARD OF REVIEW

"The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Hood v. Cotter*, 2008-0215, p. 17 (La.12/2/08), 5 So.3d 819, 829. An appellate court reviewing a lower court's ruling on an exception of no right of action should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person.

The determination whether a plaintiff has a right to bring an action raises a question of law. A question of law requires *de novo* review.

*Eagle Pipe*, 79 So.3d at 255-56 (citations omitted).

## DISCUSSION

Plaintiff contends that the trial court was incorrect in finding that the contract by which Plaintiff obtained ownership of the property did not also transfer the seller's personal rights to sue Defendants to demand restitution for damages caused to the property prior to when Plaintiff obtained ownership. Plaintiff

2

submits that such incorrect finding led the trial court to wrongfully conclude that the subsequent purchaser doctrine was inapplicable to its claims. Alternatively, Plaintiff argues that the obligations arising from a mineral servitude provide an independent basis for seeking damages from the servitude owner that are not subject to the limitations arising from the obligations established by the mineral leases.

Plaintiff and Defendants do not contest that the statutory laws of this state provide that in order for a vendee to obtain the personal rights of action belonging to its vendor, the contract must expressly provide that the vendor is assigning these personal rights to the vendee. Where the parties disagree, however, is whether the original transfer of the property to Plaintiff from its vendor, Red Mountain Timberco III, LLC, in 2007 included this express provision.[3] That contract provides, in pertinent part (emphasis added):

---

[3] The contract by which Red Mountain obtained ownership from its vendor, Sustainable Forests, LLC, is substantially the same as that in the contract between Plaintiff and Red Mountain. Additionally, there is a second contract between Plaintiff and Red Mountain that was executed in 2011, several years after the original contract. However, Defendants do not raise any issue as to the contracts transferring ownership to the other ancestors in title as they apparently acquiesce in the finding that those contracts did successfully transfer the personal rights of the vendors to the vendees.

Similarly, the contract by which Red Mountain obtained ownership of the property from Sustainable Forests in 2006 provided (emphasis added):

> Vendor is selling the Premises without any warranties whatsoever as to fitness or condition, whether expressed or implied, and Vendee expressly waives the warranty of fitness and the guarantee against hidden or latent vices (defects in the Premises sold which render it useless or render its use so inconvenient or imperfect the Vendee would not have purchased it had he known of the vice or defect) under Louisiana Civil Code Article 2475 et seq., and more specifically, that warranty imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, with respect to Vendor's warranty against latent or hidden defects of the Premises sold, or any other applicable law, not even for a return of the purchase price. Vendee forfeits the right to avoid the sale or reduce the purchase price on account of some hidden or latent vice or defect in the Premises sold. **Vendor expressly subrogates Vendee to all rights, claims and causes of action Vendor may have arising from or relating to any hidden or latent defects in the Premises.** This provision has been called to the attention of the Vendee and fully explained to the Vendee, and the Vendee acknowledges that he has read and understands this waiver of all express or implied warranties and accepts the Premises without any express or implied warranties.

3

Vendor is selling the Property "AS IS, WHERE IS" without any warranties whatsoever as to fitness or condition, whether expressed or implied, and Vendee expressly waives the warranty of fitness and the guarantee against hidden or latent vices (defects in the Property sold which render it useless or render its use so inconvenient or imperfect the Vendee would not have purchased it had he known of the vice or defect) provided by law in Louisiana, more specifically, that warranty imposed by Louisiana Civil Code 2520 et seq[.] with respect to Vendor's warranty against latent or hidden defects of the Property sold, or any other applicable law, not even for a return of the purchase price. Vendee forfeits the right to avoid the sale or reduce the purchase price on account of some hidden or latent vice or defect in the Property sold. **Vendor expressly subrogates Vendee to all rights, claims and causes of action Vendor may have arising from or relating to any hidden or latent defects in the Property**. This provision has been called to the attention of the Vendee and fully explained to the Vendee, and the Vendee acknowledges that he has read and understands this waiver of all express or implied warranties and accepts the Property without any express or implied warranties.

The trial court's written reasons in this matter provide as follows:

The instant parcel of property is the subject of a long line of title between Bodcaw Corporation, International Paper, Inc., its several affiliated companies and Red Mountain Timber Company prior to CLI acquiring ownership of the impacted property. Throughout the early chain of title between Bodcaw and International Paper until the final transfer to Sustainable Forests, language appeared in the acts of conveyance that conceivably could have transferred the litigious rights to their successor in interest. However, in the transfer between Sustainable Forests and Red Mountain Timber Company, no such language exists. The only language found is the broad, general, and "non-explicit" language as follows:

Vendor expressly subrogates Vendee to all rights, claims and causes of action Vendor may have arising from or relating to any hidden or latent defects in the Property.

While this language would seem broad enough to transfer "any" cause of action to a Vendee, it is this breadth that the Court believes is its death knell. Application of this language to "any" right leads to absurd consequences, such as claims for the destruction of structures or the unauthorized cutting of timber. The lack of specificity does not indicate to third parties that the personal right to sue for environmental damages caused by oil and gas operations was transferred to Red Mountain Timber.

This same broad general language appears in the original deed from Red Mountain Timber Company and CLI. However, this Court finds it interesting and persuasive that the parties to this instrument (presumably CLI) caused to be executed in July, 2010, a document

4

entitled "Ratification and Clarification" to the August 27, 2007 deed, specifically explaining the subrogation and transfer language to include:

> all rights to seek damages to cleanup and or restore all soils, surface waters and ground waters where oilfield waste, pollutants, contaminants, or products were stored or disposed of or where such oilfield substances are or may be found on or in the Property …. Also conveyed was the right for recovery of any damages resulting from the storage, disposal or presence of oilfield related substances on the Property conveyed.

Even if this language is accepted as being the true intent between Red Mountain Timber Company and CLI, no such language is evident providing the intentions of the parties in the deed between Sustainable Forests and Red Mountain Timber Company. Obviously, this ratification and clarification cannot operate retroactively to provide and (sic) interpretation of the rights transferred in the act of conveyance entered between Sustainable Forests and Red Mountain Timber Company.

Thus, regardless of what CLI and Red Mountain Timber Company understood was transferred in their act of conveyance, no evidence is presented that clarifies what Sustainable Forests intended to transfer to Red Mountain Timber Company. As a result, since Red Mountain Timber Company never had the right to sue for damages related to oil and gas operations, it is axiomatic that it cannot transfer to CLI those rights which it did not possess. Since the plaintiff is not asserting a real right, but rather a personal right for pre-acquisition damages, the court finds that the subsequent purchaser doctrine is applicable to the instant litigation. As a result, the Exceptions of No Right of Action filed by defendant[s] is granted as to the pre-acquisition damages, and plaintiff's petition is dismissed as to those claims.

Defendants cite three Louisiana Supreme Court cases in support of the trial court's reasoning on this point: *Eagle Pipe*, 79 So.3d 246; *Bradford v. Richard*, 46 La.Ann. 1530, 16 So. 487 (1894); and *Matthews v. Alsworth*, 45 La. Ann. 465, 12 So. 518 (1893). In *Eagle Pipe*, 79 So.3d at 281, the contract at issue was quoted as follows:

> . . . [the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners . . .

5

The supreme court found that this provision did not transfer the sellers' personal rights of action to the purchaser; therefore, the court held that the subsequent purchaser doctrine acted to bar the plaintiff's claims for hidden environmental damage to the subject property which had occurred prior to the plaintiff's purchase of the land. However, in reaching this conclusion, the *Eagle Pipe* court noted:

> We find these provisions are substantially similar to those found in *Prados* [*v. South Central Bell Tel. Co*., 329 So.2d 744 (La.1975)(on rehearing)], in which we stated the subrogation clause in the act of sale was directed to the rights and actions of warranty against previous owners, and not an express assignment or subrogation of personal rights to the new owner.

*Id.* Because the provision in the contract at issue herein is significantly different from the one in *Eagle Pipe*, we agree with Plaintiff's contention that *Eagle Pipe* does not dictate the result in this matter.

In *Bradford*, 16 So. at 487, the purchaser of land filed suit against a defendant who had allegedly "cut from said land a large number of cypress trees, and made the same into boards and shingles, staves and wood" prior to the plaintiff's purchase of the land. The plaintiff "allege[d] that said staves now are, and always have been, the sole, lawful property of [the plaintiff], and that he is entitled to recover possession of the same, or the value thereof, with full damages for their conversion." *Id.* In support of his subrogation argument, the plaintiff relied upon the following contractual provision in the purchase agreement, "'With full substitution and subrogation in and to all the rights and actions of warranty which said board has or may have against all preceding owners and vendors, and to all other rights and actions against all other persons.'" *Id.* at 488. The supreme court held that this language was too ambiguous to be construed as having conveyed to the purchaser the personal rights belonging to the seller. Furthermore, the court noted that the plaintiff had paid less for the property because of the

6

claimed damages as he was suing the defendant for damages totaling almost three times more than what he had paid for the property. As such, we conclude that *Bradford* is factually distinguishable from this case.

In *Matthews*, 12 So. at 518, the plaintiff, who purchased property subject to an existing lease, sued the defendant/lessee "for a dissolution of the lease for alleged violation, for compensation for diminution in the value of the plantation, and for the rent of the year 1891." The property had been sold to the plaintiff in January 1892 "free from incumbrances, 'except the lease to the defendant of October, 1890.'" *Id.* The act of sale in which the plaintiff acquired the property provided:

> "Said lease and all the aforesaid conveyors' rights in, to, or under the same are transferred hereby, and simultaneously herewith, to the conveyee herein. This conveyance is made with complete transfer and subrogation of all rights and all actions of warranty or otherwise against all former claimants, proprietors, tenants, or warrantors of the property herein conveyed."

*Id.* The supreme court held that the above provision did not transfer to the plaintiff the seller's personal right to recoup against the defendant for damages caused by the defendant's actions under the prior lease that had terminated before the sale of the property to the plaintiff. Discussing *Matthews*, the *Eagle Pipe* court, 79 So.3d at 266, noted:

> The personal right of the owner to sue for damages was not explicitly assigned in the act of sale, and additionally was not an accessory right which passed with the title without description of, or reference to, the claim. In the act of sale, the property was specifically described, and there was no mention of a claim for damages. . . . *Matthews* reinforces the proposition that personal rights of the former owner do not pass with the property in an act of sale unless specifically assigned or subrogated to the new owner.

We conclude that *Matthews* is also distinguishable from this matter.

The contractual provision at issue herein reads, "Vendor expressly subrogates Vendee to all rights, claims and causes of action Vendor may have

7

arising from or relating to any hidden or latent defects in the Property." The supreme court's opinion in *Eagle Pipe*, 79 So.3d 246, extended the application of the subsequent purchaser doctrine, which previously had been limited to overt or obvious damage to property, to hidden or latent defects in property. Thus, we view the use of the terms "hidden or latent defects" as an intentional attempt by the parties to this contract to protect the purchaser of this property by transferring any rights the seller might have against a third party for "hidden or latent" damages to the property, the very damages at issue in this case.[4] Thus, we find merit to Plaintiff's logic that the paragraph of the contract where this provision is found indicates that, in exchange for passing these rights on to the purchaser, the seller was obtaining the purchaser's waiver of any right to seek rescission of the sale or a diminution in the price paid for the property for these same hidden or latent defects.

As quoted above, the trial court's written reasons indicate why it reached the conclusion that the contract did not subrogate Plaintiff to the seller's rights to sue for property damages caused prior to Plaintiff's ownership:

> Application of this language to "any" right leads to absurd consequences, such as claims for the destruction of structures or the unauthorized cutting of timber. The lack of specificity does not indicate to third parties that the personal right to sue for environmental damages caused by oil and gas operations was transferred to Red Mountain Timber.[5]

We disagree with that rationale because the examples given by the trial court, i.e., "destruction of structures" on the property or "unauthorized cutting of timber" from the property, would have been open and obvious at the time that those

---

[4] In its petition for damages, Plaintiff sought, among other things, compensatory, punitive, and stigma damages and remediation of its property which was allegedly contaminated by Defendants' oil and gas operations.

[5] While the trial court was discussing the provision in the contract between Sustainable Forests and Red Mountain whereby the latter obtained ownership of the property which it would then later sell to Plaintiff herein, we note that the language of that prior contract is identical to the language in the contract between Red Mountain and Plaintiff.

damages occurred and the rights of the seller to sue a third party for those damages would not have been passed on to the purchaser under this provision which was limited to "hidden or latent defects." Thus, those types of damages are the very type of open and obvious damages for which the subsequent purchaser doctrine was created, i.e., the purchaser of property from which structures or timber has been removed is going to reduce the amount that the purchaser is willing to pay to the seller for the property, and permitting the purchaser then to recover against the third party that removed the structures or timber will result in the purchaser receiving a windfall at the seller's expense. Additionally, the damage sustained by the seller from the open and obvious damage to the property is realized in the reduced price that the seller must take from a willing buyer for the property. Thus, we conclude that the trial court's erroneous examples provide the clearest explanation for why the contractual provision in the instant case is legally distinguishable from the earlier cases applying the subsequent purchaser doctrine.

After having performed a de novo review, we find that the contract at issue operated to subrogate Plaintiff to the seller's personal rights to seek damages for all hidden, latent defects in the property caused by Defendants. Accordingly, the trial court erred in granting, in part, Defendants' exception of no right of action.

## DECREE

The writ application filed by Plaintiff-Relator, Catahoula Lake Investments, LLC is granted and made peremptory. We reverse the portion of the trial court judgment which granted, in part, the exception of no right of action filed by Defendants-Respondents, XH, LLC; Kingfisher Resources, Inc.; and Petro-Hunt, L.L.C., reinstate all of Plaintiff-Relator's claims against Defendants-Respondents and remand this matter to the trial court. All costs associated with this matter are

9

assessed against Defendants-Respondents, XH, LLC; Kingfisher Resources, Inc.; and Petro-Hunt, L.L.C.

**WRIT GRANTED AND MADE PEREMPTORY. JUDGMENT REVERSED IN PART AND RENDERED.**