## JOSEPH C. CLARK *v.* J. L. WARNER & Co. et al.

The purchaser of property is presumed to acquire all actions appurtenant to the property and necessary to its perfect enjoyment; but as to damages actually suffered by the vendor before the sale, they are personal to him, and cannot be recovered by the purchaser, with an express subrogation.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *C. Roselius*, for plaintiff. *R. Hunt*, for defendants. The judgment of the court was pronounced by

PRESTON, J. On the 16th of May, 1848, the plaintiff purchased from *Rebecca Springer* a lot of ground on Champ Elysées, near the corner of Victory street, with the buildings and improvements thereon, and all the rights thereunto belonging. The improvements consisted of a two story brick dwelling house, kitchen and out-houses. He alleges that *J. L. Warner & Co.*, for a year and upwards, have used the adjoining premises, belonging to *W. C. C. Claiborne*, as an ice house depot, and have accumulated such an enormous quantity and weight of ice thereon, and stored the same in such an unskillful and imprudent manner, that the two story brick dwelling house, kitchen and out-houses belonging to him have been entirely ruined, by the pressure, moisture and other destructive effects of the ice on his buildings; in consequence of which, the lives of himself and family have been greatly endangered, the houses have become useless and require to be demolished,—all from the causes mentioned. He claims from the keepers of the ice house, and their lessor, six thousand dollars damages, to be paid *in solido*.

*J. L. Warner & Co.* deny that they have caused the plaintiff any damage by their ice house, but call their lessor, *Claiborne*, in warranty, on the ground that he rented them their premises expressly for an ice house. *Claiborne* denies that he caused the plaintiff any damage, or that he is liable to be called in warranty by his lessees. The cause was continued as to him. The plaintiff

obtained judgment against *J. L. Warner & Co.* for two thousand one hundred dollars damages, and they have appealed.

There was much testimony on both sides; and the district judge, to satisfy himself in the conflict, minutely inspected the premises; and we would readily yield to his opinion on a question of fact and damages, but that we think he set out with a radically erroneous principle. He considered that the plaintiff had acquired, by law, as well as by the terms of his title, all the rights and claims of his vendor that, as applied to the case, had grown out of the property. In the application of this principle, he allows the plaintiff all the damages caused by the defendants to the premises while they belonged to *Mrs. Springer*, and indeed to preceding vendors; for she purchased from *Thompson Gregg*, in December, 1847, and *Stephen Herriman* owned the property in 1846; all after the erection of the ice house.

We are not aware of the provision of law to which the district court referred. It is true, that the purchaser of property is presumed to purchase all actions appurtenant to the property, and necessary to its perfect enjoyment; but as to damages actually suffered before the purchase, we know of no other principles governing the case than those referrable to this general provision of the code, that "every act of man that causes damage to another obliges him by whose fault it happened to repair it." It is a mere corollary, that the reparation must be made to him who suffered the injury. And the principle is strikingly illustrated by this case. The plaintiff, after possessing the property twenty months, claims one-third more damages than he gave *Mrs. Springer* for his lot with all the buildings and improvements. This leads to the impression, that the modicity of the price he gave for the premises may, perhaps, be attributed to their dilapidated and dangerous situation, on account of the erection of the ice house and other causes. It is impossible, from the law, to concur with the district court, that these damages, which probably caused the moderate price given for the house and kitchen, should be a source of profit to the purchaser, who had a perfect knowledge of their existence when he purchased.

The damages which occurred while *Herriman* owned the premises, belong to him; a part belongs to *Gregg* in like manner; and *Mrs. Springer* is entitled to what happened while she owned the property. Did she or they transfer their claim to damages to the plaintiff? The claim is an incorporeal right, and strictly personal property. Her bill of sale to the plaintiff is in the usual form for the conveyance of real estate and its appurtenances. It does not transfer her claim for damages, expressly, nor is there any thing in it which indicates a transfer by implication. The rights and appurtenances mentioned in the bill of sale have always been considered real rights. It does not appear, therefore, either by law or contract, that the plaintiff has any claim for damages previous to the 16th of May, 1848, when he purchased the property.

The district judge allowed the damages for the following reasons: that the house was dangerous to live in, the party wall being cracked in many places; and that the condition of the house was evidently occasioned by the superincumbent wall of the defendants, as proved by the witnesses. Now, this superincumbent wall, of from ten to sixteen feet in height, is an old wall, placed on the original party wall eight or ten years ago, as appears by the testimony of the surveyor, *D'Hemécourt*, that is, long before the plaintiff purchased the property. The judge further expresses the opinion, from personal inspection, that the pressure of the wall is much increased by an undue proportion of the weight of the roof of the defendants' building being thrown upon the party wall, in con-

sequence of all the joists in the building having been removed in order to fit it up for an ice house. The defendants' premises were thus fitted up for an ice house in 1845, three years before the plaintiff purchased his house; and it is strongly proved that the old walls were badly built of bad materials.

Differing from the district court on the question of law involved in the case, and as it is possible that the plaintiff might, by this difference of opinion, be induced to furnish more explicit testimony as to any damages suffered by him, within the twelve months immediately before the institution of his suit; and not wishing to express any opinion as to the rights of the parties in the re-construction of another party wall, which appears to have had some influence on the opinion of the district judge, we think there should not be a final judgment against the plaintiff; but one only of non-suit.

The judgment of the district court is reversed; and it is decreed that the plaintiff be non-suited, and pay costs in both courts.