HALL, Judge.
Urban Management Corporation brought this suit against Ford Motor Credit Company seeking recovery for damages to leased premises allegedly due under a lease agreement granted by Urban Enterprises Corporation as lessor to defendant as lessee. The lease agreement was for a three-year term beginning July 15, 1967, and expiring July 14, 1970. Plaintiff alleged that all rights under the lease were assigned to it by Urban Enterprises Corporation in an assignment dated October 31, 1969. The petition alleged defendant vacated the leased premises on or about July 14, 1970, leaving the premises with damages beyond ordinary wear and tear in a total amount of $2,800.50. Suit was filed August 10, 1970.
In its answer defendant admitted the lease agreement, denied for lack of knowledge the assignment from Urban Enterprises to Urban Management, and denied generally the allegations of damage beyond ordinary wear and tear.
The case was tried November 19, 1970. Plaintiff offered into evidence the lease agreement, the assignment from Urban Enterprises to Urban Management of the lease which included all rights arising under the lease appertaining to damages to the leased premises, and evidence relating to the damages to the leased premises. Defendant offered into evidence testimony and photographs for the purpose of refuting plaintiff’s claims of damages beyond ordinary wear and tear. Defendant further offered into evidence, over plaintiff’s objection, a deed dated September 10, 1969, recorded September 19, 1969, by which the property containing the leased office space was conveyed from Urban Enterprises to Louisiana Real Estate Trust, a Louisiana real estate investment trust. Some testimony was elicited at this point from Michael D. Fess, *406 principal figure in Urban Enterprises, Urban Management and Louisiana Real Estate Trust, concerning the interrelationship of the three entities.
The purpose of defendant’s introduction of the deed from Urban Enterprises to Louisiana Real Estate Trust was to support its defense (which was not required to be and was not specially pleaded) that plaintiff, Urban Management, was entitled to recover as assignee of Urban Enterprises only for damages sustained prior to the sale by Urban Enterprises to Louisiana Real Estate Trust.
The evidence was closed and the case was continued for argument.
On December 23, 1970, plaintiff filed an “Application to Reopen Evidence” for the filing of additional evidence consisting of an assignment by Louisiana Real Estate Trust to plaintiff of all of its right to claim damages under the provisions of the lease. The motion to reopen was argued, submitted and sustained by the district court on January 4, 1971.
When the reopened case came before the court on January IS, plaintiff offered into evidence an instrument dated December 22, 1970, by which Louisiana Real Estate Trust (1)acknowledged its cognizance and assent to the assignment of lease previously filed in evidence and dated October 31, 1969, from Urban Enterprises Corporation to Urban Management Corporation, and (2) assigned to Urban Management Corporation all of its right, title and interest in and to defendant’s lease including all rights arising under the lease appertaining to damages to the premises through the termination of the lease. Attached to the December 22, 1970, instrument, was another instrument dated October 31, 1969, by which Michael D. Fess, liquidator of Urban Enterprises Corporation, assigned to Urban Management Corporation a number of leases affecting portions of the Centenary Business Center, including the lease to Ford Motor Credit Company. This latter instrument, joined in and assented to by Louisiana Real Estate Trust, refers to a lease by the Trust to Urban Management Corporation of the entire Centenary Business Center, with Urban Management Corporation to have the right to amend and renew the assigned leases. Plaintiff also offered an “Amended Petition For Damages Under Lease Contract In Order To Conform To Evidence”, purporting to amend its original petition to refer to the assignment from Louisiana Real Estate Trust to plaintiff. Defendant objected to all of the offerings. The district court took under advisement the admissibility of the evidence offered and the right to file the supplemental or amended petition.
On December 15, 1971, the district court rendered a written opinion in which it held there was no provision of the Louisiana Code of Civil Procedure which allowed the action requested by plaintiff. The court further held that the right to recover damages for injury to property vests in the owner of the property at the time the injury occurs, citing Clark v. Warner, 6 La. Ann. 408 (1851), and since the various alleged damages occurred over a three-year period during which time the premises had two different owners, it was impossible for the court to determine when the alleged damages occurred and, therefore, plaintiff was not entitled to recover.
From the judgment rendered accordingly, plaintiff appealed specifying the following errors:
(1) The trial court erred in failing to consider the assignment from the Trust to plaintiff in view of the fact that same was offered and accepted by the court without objection from defendant;
(2) Alternatively, the trial court erred in holding it had no discretion or right under the law and jurisprudence to allow the supplemental or amended pleading and evidence of the assignment from the Trust to plaintiff;
(3) Alternatively, even if the evidence of the assignment was not properly *407 before the court, then the court erred in refusing to allow judgment in favor of plaintiff for the cost of replacing an air conditioning compressor, which item of expense was shown to have been incurred during the time when the building was owned by Urban Enterprises.
Plaintiff’s first specification of error is without merit. The record clearly reflects that defendant timely objected to the reopening of the case for additional evidence and timely objected to the admissibility of the evidence when offered and to the filing of the amended petition.
In support of its second specification of error, plaintiff contends that the trial court had the discretion and right to allow and should have allowed the filing of the supplemental or amended petition and the evidence of the assignment from the Trust to plaintiff.
The case was tried and the evidence closed with the record showing at that point that Urban Enterprises had assigned to Urban Management its rights as lessor together with the right to recover for damages to the leased premises, but that Urban Enterprises had sold the property to Louisiana Real Estate Trust in September, 1969.
The original petition clearly put at issue damages to the leased premises over the entire three-year term of the lease allegedly due under the terms of the lease contract. Evidence was offered at the trial by both parties concerning the alleged items of damage most of which related to the use of the premises over the entire lease term and the condition of the premises at the expiration of the lease. The question of ownership or plaintiff’s right to recover was raised for the first time during the presentation of defendant’s case and apparently caught plaintiff by surprise. It was within the trial judge’s discretion in the interest of justice to reopen the case after the conclusion of the trial for the introduction of additional evidence bearing on this issue. LSA-Code of Civil Procedure Articles 1631 and 1632 (See Comment (b) under Article 1632); Nalty v. Nalty, 222 La. 911, 64 So.2d 216 (1953); Dupre v. Hartford Accident & Indemnity Company, 200 So.2d 753 (La. App. 3d Cir. 1967).
Having exercised sound discretion in granting plaintiff’s motion to reopen the evidence, there was no legal barrier or prohibition to admitting the proffered documents into evidence or to allowing the amendment to the petition to conform to the evidence. The evidence was material and relevant to the issue, raised by defendant, of plaintiff’s ownership, title or interest in the cause of action asserted. The case was again at trial and under LSA-Code of Civil Procedure Article 1154, the court had the authority to allow an amendment to the petition to conform with the evidence. Article 1154 provides, in part:
“ . . .If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.”
Clearly the presentation of the merits is subserved by the amendment and defendant makes no contention that it was prejudiced in maintaining its defense on the merits or that it needed a continuance to meet the additional evidence.
The additional evidence and the amendment to the petition do not engraft a new and additional cause of action onto plaintiff’s suit as contended by defendant. We are dealing here with only one cause of action — asserted by plaintiff originally — and that is recovery by the lessor from the lessee for damages to the leased premises under the express provisions of the lease contract. In its original petition plaintiff alleged that it had acquired the rights of the lessor, including the rights apper *408 taining to damages to the leased premises. It further alleged that the premises were damaged beyond ordinary wear and tear during the term of the lease for which damages the lessee was responsible under the terms of the written lease. Thus, plaintiff alleged both a right and cause of action against the defendant lessee. The only effect of the additional evidence and amendment to conform therewith is to show that plaintiff’s rights as lessor were acquired by assignment and agreement with Louisiana Real Estate Trust as well as by assignment from Urban Enterprises as originally alleged.
Considering the documentary evidence coupled with the testimony of Fess, we hold that plaintiff, Urban Management, was vested with the rights of the lessor under the lease agreement, including the right to recover for damage to the leased premises at the expiration of the lease and at the time suit was filed.
Fess was president and later liquidator of Urban Enterprises. He was sole stockholder and president of Urban Management. The sale of the office building to the Trust was made for tax purposes and advantages.
The deed from Urban Enterprises to the Trust was dated and recorded in September, 1969. On October 31 of this same year, Urban Enterprises executed an assignment to Urban Management, assigning the Ford Motor Credit Company lease together with rights appertaining to damages to the leased premises. On the same date, by separate instrument, Urban Enterprises assigned all of the leases in the office building, including the Ford lease, to Urban Management. The Trust joined in this instrument, which also referred to a lease by the Trust to Urban Management and to the authority of Urban Management to amend and renew the assigned leases.
Fess testified that the arrangement between the companies at the time of the sale was that plaintiff would operate and manage the office building under a “management contract”, that all the leases were assigned to plaintiff, that Louisiana Real Estate Trust “leased” the entire building to plaintiff with plaintiff to pay a monthly “rental” to Louisiana Real Estate Trust and with plaintiff to be responsible for all maintenance, repairs, upkeep, etc.
We consider and give some weight to the December, 1970, instrument, not as an assignment executed after the trial, but as evidence of the relationship between Louisiana Real Estate Trust and plaintiff from and after the acquisition of the building by the Trust.
The reasonable conclusion to be drawn from the evidence is that the transactions between the three interrelated companies in September and October, 1969, resulted in plaintiff, Urban Management, being vested with the rights of the lessor under the lease to defendant, including the right to enforce the provisions of the lease relating to damages to the leased premises. Paragraph 1 of the lease provides in part:
“1. Lessee ... at the expiration of the term will peacefully yield up to Lessor the said office space in as good order and repair as when delivered to Lessee, except for ordinary wear and tear. . Lessee covenants that no waste or damage shall be committed upon or to the demised office space; . . .”
Paragraph 8 of the lease further provides in part:
“8. Lessee agrees to be responsible for damages to the demised office space and the Building resulting from the use of said office space by Lessee, except ordinary wear and tear, . . . ”
We turn to a consideration of the several specific items of damage for which plaintiff contends it is entitled to recover under the quoted provisions of the lease.
Plaintiff claims $140 for the cost of replacing damaged wall paneling which was scratched and marred and had holes in it. The evidence shows the paneling was of a relatively cheap quality, more susceptible to permanent damage than better grades of paneling. The damage to the paneling *409 appears to be the sort of scratches and marks that could reasonably be expected from the hanging of pictures, installing telephone outlets, placement of file cabinets, and the like, associated with normal use of office space. The damage in this category is not beyond ordinary wear and tear.
Next, plaintiff claims $100 as the cost of replacing and painting a hollow-core entrance door and $150 to repaint the woodwork to match the door. The evidence shows defendant’s office manager, after tearing his coat on the metal striker that receives the door latch, hammered down the striker. Marks on the door latch indicate that thereafter the latch did not hit the striker properly, and the photographs in evidence show the wood around the door has cracked as a result of the situation. Defendant’s manager should have requested the lessor to have the striker adjusted rather than attempt to adjust it himself, causing the door to be damaged. See: Koerkel v. Coburn, 6 So.2d 249 (La.App.Orl.1942), involving similar facts. The evidence is that a new door would cost $86 and repainting the door and woodwork would cost $65 or a total of $151. Plaintiff is entitled to recover this amount.
 The most substantial item claimed by plaintiff is $1,195.50 to replace the carpet in the leased office space. The evidence shows the carpet is badly worn, particularly in the area where office personnel sat at their desks. It was also shown that the carpet in other offices in the building where chair pads were used was in good condition. The main issue here is whether the lessee was under a duty to use chair pads to protect the carpet and whether a failure to do so amounted to waste or abuse. The lease itself contains no such requirement. While a majority of offices use chair pads on carpeted floors, we are of the opinion there is no obligation on the part of a tenant to do so- in the absence of a specific requirement in the lease. The evidence shows the carpet used in the leased premises was relatively inexpensive and its worn condition resulted from ordinary use in a busy office. Plaintiff is not entitled to recover for this item.
Plaintiff claims $157.50 to replace drapes and $17.50 to repair drapery rods. Photographs show some tears and pulled threads in the drapes and that some rods and keepers have been broken or pulled away from the walls. The drapes are of a loosely-woven material. It does not seem improbable that such damage would result from moving furniture, opening and closing the drapes, and the like over a three-year period. Plaintiff has not shown that this damage was caused by anything other than normal wear and tear.
$40 is claimed to replace warped ceiling tiles in the storage room. The evidence shows defendant’s employees stored boxes and other items on top of the ceiling tiles and that it was necessary to remove one of the tile panels in order to put the stored material on top of the ceiling. Defendant’s expert witness conceded this was not good practice. We conclude the storage of material on top of the ceiling tiles, not designed for that purpose, caused the warping and plaintiff is entitled to recover for this item.
Plaintiff seeks to recover $1,000 for waste and damage to the air conditioning system, including $150 as the cost of replacing a compressor and the balance as extra cost of electricity over the term of the lease due to setting the thermostat too low. Fess, who had experience with air conditioning systems, testified defendant’s employees often left the thermostat set at 60° overnight, which could have caused the damage to the compressor requiring its replacement. He further calculated what he believed was the additional cost of electricity over the three-year term of the lease due to leaving the thermostat set below normal temperature range. Defendant’s witness testified it was often necessary to set the thermostat at 60° in order to cool the premises and even then it was often not cool enough.
*410 The evidence as to the causal relationship between the thermostat setting and the replacement of the compressor is insufficient. There is no legal basis for the recovery of extra electricity costs and, the proof in this connection is insufficient. Further, it is not reasonable to expect a tenant to readjust the thermostat when leaving the office. The lessor could protect itself by having an automatic turn-off device or by having its own employees check the thermostat at night.
For the reasons assigned, the judgment of the district court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Urban Management Corporation, and against defendant, Ford Motor Credit Company, in the sum of $191, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding, including the costs of this appeal.
Reversed and rendered.