ON REHEARING GRANTED
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
PAUL A. BONIN, Judge.
_JjWe granted rehearing in this matter and assigned the rehearing to a five-judge panel constituted pursuant to La. Const, art. V, § 8. Because we conclude that our original decision is in error, we vacate that opinion. Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 09-0298 (La.App. 4 Cir. 2/10/10), 47 So.3d 428, 2010 WL 487238. We decide today that because Eagle Pipe and Supply, Inc. is a party that sustained injury allegedly caused by the exceptors,[1] the district court erred in granting the exception of no right of action and explain our decision in Part II.
On account of our conclusion that Eagle Pipe has a right of action, we must now for the first time also consider the appeal of the district court’s rulings denying the exception of improper venue[2] and the motion to transfer on the 12grounds of forum non conveniens.[3] Because we find from our review of the record regarding the exception of improper venue that the trial court’s ruling was correct and because we find no abuse of discretion in the denial of *438 the motion to transfer, we affirm the district court rulings and explain in greater detail in Part III.
We finally, but briefly, here consider the exception of no cause of action filed in this court by several of the defendants.[4] See La. C.C.P. arts. 927 A(5) and 928 B (providing in part, “[t]he peremptory exception may be pleaded at any stage of the proceeding prior to submission of the case for a decision”). Because the district court had ruled previously in the judgment before us that Eagle Pipe would be allowed to amend its pleadings to clarify its allegations against these exceptors, we defer a ruling on the exception. See La. C.C.P. arts. 926 A(5), 932 A, and 934. If, on remand, Eagle Pipe does not timely amend its petition or, if timely amended, the amendment does not satisfy the objections of the exceptors either with respect to vagueness or to failure to state a cause of action, the exceptions can be re-urged in the district court.
I
Eagle Pipe purchased immovable property in Lafayette Parish for its fair market value on April 22, 1988.[5] Before the sale, the property had been leased to Union Pipe, Inc., which operated a pipe yard for the purpose of buying, cleaning, |sstoring, and selling used oilfield tubing. According to the petition,[6] during the cleaning process, radioactive scale fell from the tubing and was deposited onto the surface of the pipe yard, thereby contaminating the soil. During that period numerous oil companies sold or tendered to Union Pipe used oil field equipment for cleaning and maintenance; this equipment also contained hazardous, toxic, and carcinogenic radioactive materials. Union Pipe’s lease had terminated and its activities on the property had ceased by the time of the sale in 1988.
Some years after the sale and just before this suit was filed in July 2008, as a result of testing by the Louisiana Department of Environmental Quality (LDEQ), Eagle Pipe discovered that the property had been contaminated with technologically enhanced naturally occurring radioactive materials (TENORM).[7] Not only did LDEQ notify Eagle Pipe of the discovery, but it ordered Eagle Pipe to remediate the property pursuant to the authority of La. R.S. 30:2276. Eagle Pipe brought suit *439 against a number of defendants who are allegedly responsible for the contamination, including numerous oil companies which had sold used equipment to Union Pipe[8] as well as numerous transporters who had delivered the equipment to the property.[9]
JJI
The exception of no right of action is peremptory. La. C.C.P. art. 927 A(6). The sole basis for the objection is the uncontested fact that Eagle Pipe only acquired the property after the contaminating acts, if not effects, of the defendants had discontinued and that the acquisition was without an express reservation of rights, subrogation, or assignment to Eagle Pipe from its vendor. See, e.g., Prados v. South Central Bell Telephone Company, 329 So.2d 744 (La.1975) (on rehearing). The excepting defendants do not contend that the contamination was known or reasonably knowable by Eagle Pipe prior to its purchase of the property. The trial court decided as a matter of law that Eagle Pipe possessed no right of action for contamination of its property because the contamination occurred under a lease prior to purchase, and thus created a personal (as opposed to real) right that the former owners did not expressly assign to Eagle Pipe. The trial court concluded that, because Eagle Pipe did not acquire an expressed subrogation of its vendors’ rights against their lessee, Union Pipe, it had no right of action. Because the grant of this exception presents a question of law, we review it de novo. Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798.
A
The exception of no right of action must be granted when the party bringing suit cannot assert a real and actual interest. See La. C.C.P. art. 681 (“[ejxcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts”). The exceptor bears the burden of proof, Carter v. Haygood, 04-0646, p. 8 (La.1/19/05), 892 So.2d 1261, 1267, and may introduce evidence to support or controvert any of the objections pleaded. Indus. Co., Inc. v. Durbin, 02-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216, quoting La. C.C.P. art. 931. As we earlier noted, the facts stated in the petition were not controverted in the lower court.
Right of action concerns only whether the plaintiff “belongs to the particular class in whose exclusive favor the law extends the remedy,” Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1060, 1095-96, 262 So.2d 328, 333-34 (La.1972) quoting McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul. L.Rev. 17, 29-30, and does not take into account whether the remedy can be exercised against a particular defendant. Babineaux, 262 So.2d at 334.
The trial court’s ruling relies upon a rule announced in Prados, which was followed in St. Jude Med. Office Bldg. Ltd. P’ship v. *440 City Glass and Mirror, Inc., 619 So.2d 529, 580 (La.1993). The trial court, and the exceptors here, understand that rule to comprehensively provide that “a purchaser cannot recover from a third party for damage to the property incurred prior to sale.” Prados, 329 So.2d at 750. Such a rule would preclude, of course, a right of action on the part of Eagle Pipe. We, however, conclude that these decisions bear closer examination of their facts in order to decide whether they do after all preclude a right of action by Eagle Pipe against the parties before our court.
While there is no question that Eagle Pipe’s vendors were the lessors of Union Pipe before the sale, and that Union Pipe’s lease terminated prior to the sale, Eagle Pipe’s claims against the oil companies and transporters do not arise from Union Pipe’s activities as a lessee qua lessee.[10] The explicit holding of Prados on rehearing is “that the present owner has no right to recover damages |fiagainst the former lessee.” Prados, 329 So.2d at 751 (emphasis supplied). But Prados like LeJeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, “involve[ ] rights arising under a lease and [are] distinguishable from the instant facts.” Hopewell, Inc. v. Mobil Oil Company, 00-3280 (La.2/9/01), 784 So.2d 653, 653 (per curiam). In Hopewell the purchaser contended that, through oil and gas operations, hazardous and toxic wastes were deposited in the ground and asserted that the oil company had a duty to restore the property, which duty extended to subsequent landowners. See Hopewell, Inc. v. Mobil Oil Company, 33,-774 (La.App. 2 Cir. 11/1/00), 770 So.2d 874, 876. The second circuit concluded that Prados requires sustaining the exception of no right of action. But the Louisiana Supreme Court, rejecting that authority and reasoning, reversed the second circuit and reinstated the trial court’s ruling denying the exception of no right of action. Id.
We understand the Supreme Court’s decision in Hopewell to make this same important distinction which we now make: that Prados is limited to actions by a subsequent purchaser against a former lessee arising out of the terminated lease. Notably, the cases cited by the defendants to support the application of this rule relied upon by the trial court all involve causes of action arising under leases.
Moreover, the decision in Prados relied upon the rule that “a buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sale price.” Prados, 329 So.2d at 751. This is a sound rule, but one not applicable to the facts of this case. First, the TENORM contamination is hidden, not overt.[11] In Prados the lessee had left standing |7concrete buildings; they surely were not hidden. Likewise, in other decisions relied upon by the trial court and the exceptors, the property’s condition was not hidden, including, for example, in St. Jude Medical Office Bldg. Ltd. P’ship v. City Glass and Mirror, Inc., 619 So.2d 529, 530 (La.1993), which involved defective windows, and Dorvin Land Corporation v. Parish of Jefferson, 469 So.2d 1011 (La.App. 5th Cir.1985), which involved dumped dredging soil. The damage to the subject properties was sustained by the vendors and was overt and obvious at the *441 time of the sale.[12] Second, Eagle Pipe paid full market value, not a discounted price, because the true condition of the property was not yet discovered or discoverable.
While the rule of law announced in Pra-dos is a sound rule, it is limited to its dispositive facts and we, therefore, conclude that Prados is not controlling in this case which does not involve a lease and does not involve an overt condition of property.
B
The general rule regarding the assertion of a real and actual interest is contained in La. C.C. art. 2315 A: “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” The complex factual background of the current case, involving the subsequent purchase of property with a hidden defect, does not present sufficient reason to depart from the fundamental principles of injury and reparation. Since as early as 1851, the Louisiana Supreme Court understood reparation thus: “reparation must be made to him who suffered the injury.” Clark v. Warner, 6 La. Ann. 408, 408 (La.1851) ls(“but as to damages actually suffered before the purchase, we know of no other principles governing the case than those referrable to this general provision of the code, that ‘every act of man that causes damage to another obliges him by whose fault it happened to repair it.’ It is a mere corollary, that the reparation must be made to him who suffered the injury”). See also, Bradford v. Richard, 46 La. Ann. 1530, 16 So. 487 (La.1894) (quoting Clark, supra, at 408).
The injury is not dispelled by a subsequent purchase, and therefore we see no reason why the right to seek remedy for it should be. The injured party should not be precluded from seeking reparation merely because the damage remained hidden long enough for the property to be sold. In such cases, injury is deemed to occur when the damage is, or should have been[13], discovered. See, e.g., Ricks v. Kentwood Oil Co., Inc., 09-0677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363 (“triggering event” for coverage of emotional and mental distress damages was date of discovery, as opposed to date of harmful conduct, where test of well’s water indicated presence of toxic substances from non-overt gasoline leak caused by oil company’s underground storage unit); Rando v. Top Notch Properties, L.L.C., 03-1800 (La.App. 4 Cir. 6/2/04), 879 So.2d 821 (manifestation rule on trigger of coverage under liability policy applied to claim for structural defects in house resulting from faulty pile-driving); Oxner v. Montgomery, 34,727 (La.App. 2 Cir. 8/1/01), 794 So.2d 86 (claim for damage from improper construction of house was triggered when the damage to the house manifested itself, rather than when the negligence occurred); James Pest Control, Inc. v. Scottsdale Ins. Co., 99-1316 (La.App. 5 Cir. 6/27/00), 765 So.2d 485 (the | ¡¡effects of termite infestation did not become “damage” until discovery by homeowners).
*442 Eagle Pipe has lost the use of its land and will incur the cost of remediating the property; its property has clearly been damaged by the depositing of radioactive materials. The oil companies and transporters, if deemed responsible, are therefore obliged to make reparations to “him who suffered the injury.” Clark, supra, at 408. As a party “who suffered [an] injury,” Eagle Pipe enjoys a right of action.
C
Therefore, applying La. C.C. art. 2315 and the Clark line of cases, we hold that: (1) the manifestation of radioactive contamination allegedly caused by defendants constitutes an injury giving rise to a legitimate cause of action; (2) the previous owners sustained no injury through the sale of the land because they allegedly received full value for their interest as if it were uncontaminated; (3) Eagle Pipe is an injured party because the damage manifested itself after Eagle Pipe’s purchase of the land, thus devaluing Eagle Pipe’s acquisition and requiring its remediation, and (4) as an injured party, Eagle Pipe is deserving of reparation.
Therefore, for the foregoing reasons, we vacate our previous holding and we reverse the trial court’s sustaining of the exception of no right of action.
Ill
We turn in this Part to a discussion of our decision regarding, first, the exception of improper venue and, second, the motion to transfer on the ground of forum non conveniens. Although some of the excep-tors had prevailed in the lower | ,ncourt and the lawsuit as to them had been ordered dismissed, they nonetheless answered Eagle Pipe’s appeal to preserve their right to appellate review on the issues of venue and forum non conveniens in this court in the event that the trial court was reversed. See La. C.C.P. art. 2133 A.
A
Chevron and OXY objected that Orleans Parish is a not a “parish where an action may properly be brought [against them] and tried under the rules regulating the subject.” La. C.C.P. art. 41. “A foreign corporation ... licensed to do business in this state shall be brought in the parish where its primary business office is located as designated in its application to do business in the state.... ” Chevron, a licensed foreign corporation, argues that by letter to the Secretary of State dated July 15, 2008 it changed its principal place of business from Orleans Parish to St. Tammany Parish. Coincidentally, this is the same day on which this lawsuit was filed by Eagle Pipe. “[V]enue is determined at the time that suit is filed.” Thompson v. Prudential Property and Casualty Inc. Co., 562 So.2d 34, 35 (La.App. 4th Cir.1990).
While La. R.S. 12:308 B, the statute concerning changes of principal place of business, registered address, and registered agent, is silent concerning when a change in the location of a principal place of business becomes effective, it does explicitly state that a change of registered address or registered agent becomes effective once it is filed with the Secretary of State. But in Wells v. R.J. Marchand Contractors Specialties, Inc., 94-2156 (La. App. 4 Cir. 5/16/95), 655 So.2d 800, 803, we stated that the “plaintiff is entitled to rely on the information contained in public records which indicated at the time plaintiff filed his suit that the defendant corporation^] principal business establishment was located in Orleans Parish.” | T1 (emphasis supplied). Chevron’s letter was not received by the Secretary of State until July 17, 2008, and it was not recorded *443 until September 2008. According to public records available on July 15, 2008, when Eagle Pipe filed its suit, Chevron’s principal place of business was located in Orleans Parish. Therefore, the trial judge was correct in finding that Orleans Parish is a parish of proper venue as to Chevron.
With respect to the objection lodged by OXY, it too was correctly overruled. Eagle Pipe asserts that OXY is jointly liable with Chevron and others for its damages. See La. Civil Code art. 2324 B. Because venue is proper under La. C.C.P. art. 42(4) as to a joint obligor, Orleans Parish is a parish of proper venue as to all joint obligors, including OXY. See La. C.C.P. art. 73 A.
Accordingly, the district court’s overruling of the exception for improper venue is affirmed.
B
Chevron, OXY, Exxon, Shell, Kerr-McGee, Hess, Berry, and Patterson contradictorily moved to transfer the lawsuit from Orleans Parish to Lafayette Parish “[f]or the convenience of the parties and the witnesses, in the interest of justice ...” La. C.C.P. art. 123 A. The parties agree that, because the property at issue, the alleged damage, and a plurality of the defendants are all located in Lafayette Parish, suit could have been properly brought there. But the district court is given great deference in ruling on a motion for forum non conveniens; the ruling should be affirmed absent an abuse of discretion. Martinez v. Marlow Trading, S.A, 04-0538 (La.App. 4 Cir. 2/2/05), 894 So.2d 1222; Boudreaux v. Able Supply Co., 08-1350 (La.App. 3 Cir. 10/7/09), 19 So.3d 1263.
112Ruling on a forum non conve-niens claim, a court takes into account the following private interest factors: (1) convenience of the parties and witnesses; (2) access to the sources of proof, as well as viewing of the premises if appropriate; (3) the cost of obtaining attendance of witnesses; and (4) advantages and obstacles to a fair trial. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Martinez, supra, at 1226. Accordingly, we find no abuse of discretion in this case where the moving parties have not shown that (1) trying the suit in Orleans Parish rather than Lafayette Parish would be more inconvenient to the parties or witnesses, (2) that access to sources of proof or the premises will be impeded, (3) the cost of obtaining witnesses would be increased, or (4) Orleans Parish courts would present obstacles to a fair trial. Therefore, we affirm the trial court’s denial of the motion to transfer this matter to Lafayette Parish.
DECREE
We reverse the judgment of the district court insofar as it dismissed with prejudice Eagle Pipe and Supply, Inc.’s lawsuit against the parties before us on this appeal. We affirm the district court’s judgment insofar as it denied the exception of improper venue and denied the motion to transfer on the grounds of forum non con-veniens. We defer ruling on the exception of no cause of action filed in this court and refer the exception to the district court after the petition is timely amended. Accordingly, we remand this matter to the district court for further proceedings consistent with this decision.
REVERSED IN PART; AFFIRMED IN PART, AND REMANDED.
TOBIAS, J., concurs with reasons.
LOVE, J., dissents with reasons.

. The exceptors are: Hess Corporation (formerly known as Amerada Hess Corporation); Chevron, U.S.A., Inc.; Texaco, Inc.; Exxon Mobil Corporation; Kerr-McGee Chemical Worldwide, L.L.C.; OXY USA, Inc.; Shell Offshore, Inc.; Shell Oil Company; SWEPI, LP; Berry Petroleum Company; Intracoastal Tubular Services, Inc.; Patterson Truck Line, Inc.; Packard Truck Lines, Inc.; Acme Truck Lines, Inc.; Ace Transportation, LLC; Dynasty Transportation, LLC; Venture Transport Logistics, L.L.C.; and Venture Transport Logistics Holdings, L.L.C.

. Exceptions of improper venue were brought by Chevron and OXY.

. Motions to transfer on forum non conve-niens were filed by Exxon, OXY, Shell, Kerr-McGee, Hess, Chevron, Patterson, and Berry.

. The exception of no cause of action was filed in this court by Acme. Other transporter-defendants referenced the trial court’s action on the exception of no cause of action.

. The sellers were Robert Bridges, Patsy Trimble Bridges, and Edmund J. Baudoin, Jr., all of whom are named defendants, but whose interests are not before us on this appeal. Eagle Pipe, it should be noted, suggested to ús that post-appeal a realignment of interests may have occurred, but because the facts supporting such suggestion were not considered by the trial court, we denied Eagle Pipe’s motion to supplement this record.

. The source of the recitation of facts in Part I is the petition, which facts the exceptors did not controvert at the hearing on the exception of no right of action. See La. C.C.P. art. 931. See Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.

.For more extensive information about TE-NORM, see, generally, James R. Cox, Naturally Occurring Radioactive Materials in the Oil Field: Changing the NORM, 67 Tul. L.R. 1197 (1993); Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 8/8/07), 965 So.2d 511. Although the human senses cannot detect its presence, prolonged exposure to TENORM drastically increases the chances of developing certain diseases such as cancer and has devastating effects on plant and animal life. Cleaning TENORM is both expensive and dangerous. One source of TENORM is the mud that collects against the inside of pipes used for extracting oil and natural gas. When these pipes are cleaned, the mud can contaminate the land it falls onto.

. The oil company defendants include: Hess Corporation (formerly known as Amerada Hess Corporation); Chevron, U.S.A., Inc.; Texaco, Inc.; Exxon Mobil Corporation; Kerr-McGee Chemical Worldwide, L.L.C.; OXY USA, Inc.; Shell Offshore, Inc.; Shell Oil Company; SWEPI, LP; Stone Oil Company of Baton Rouge; and Berry Petroleum Company.

. The transporter defendants included: Intra-coastal Tubular Services, Inc.; Walker Trucking, Inc.; Patterson Truck Line, Inc.; Packard Truck Lines, Inc.; Acme Truck Lines, Inc.; Ace Transportation, LLC; Dynasty Transportation, LLC; Venture Transport Logistics, L.L.C.; and Venture Transport Logistics Holdings, L.L.C.

. If Eagle Pipe’s cause of action was against Union Pipe for breach of its lease obligations, which had terminated prior to Eagle Pipe’s purchase of the property, Prados may well be controlling.

. Black's Law Dictionary, defines "overt” as: "Open and observable; not concealed or secret.” Black's Law Dictionary 1214 (9th ed.2009).

. A purchaser of property cannot at the same time purchase a tort from his vendor, the damage from which tort has already been sustained, and is overt, known or reasonably knowable.

. Determinations of when the damage "should have been” discovered, including whether Eagle Pipe is a sophisticated purchaser such that it should have known about the risk of TENORM contamination in pipe yards, are factual matters and should be addressed by the district court at trial. See, e.g., Nelson Radiology Associates, L.L.C. v. Integrity Medical Systems, Inc., 2008-0443 (La.App. 4 Cir. 7/29/09), 16 So.3d 1197.