WEIMER, J.,
dissenting.
hi respectfully dissent from the majority opinion insofar as it adopts a bright line rule expanding the application of the jurisprudentially created subsequent purchaser rule to all circumstances, regardless of the facts. In my view, the blanket expansion of the subsequent purchaser rule to include latent conditions on property divorced of any consideration of the particular circumstances out of which those conditions arise has the potential to produce unworkable and inconsistent results at odds with the facts and the law.
This matter comes before the court on an exception of no right of action that simply tests whether the plaintiff has an interest in the action. La. C.C.P. art. 927(A)(6). In other words, the exception asks “whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.” Hood v. Cotter, 2008-0215, p. 17 (La.12/2/08), 5 So.3d 819, 829. Adopting a bright line, inflexible approach to this preliminary determination in view of the myriad of factual circumstances that may present themselves is, in my view, unwise and conducive to unjust and inequitable results.
*285 |2The subsequent purchaser rule is a jurisprudential creation. It recognizes that the right to recover for damage to real property is a personal right belonging to the property owner at the time the damage occurs; as such, it does not transfer to a subsequent purchaser absent an express assignment. See, St. Jude Med. Office Bldg. Ltd. P’ship v. City Glass & Mirror, Inc., 619 So.2d 529, 530-531 (La.1993); Prados v. S. Cent. Bell Telephone Co., 329 So.2d 744, 749-751 (La.1976) (on reh’g). Although linked to La. C.C. art. 1764,[1] the rule is not derived from that, or any, codal provision; rather, it finds its roots in the case of Clark v. J.L. Warner & Co., 6 La.Ann. 408 (La.1851).
In Clark, the plaintiff purchased a tract of land with a two-story brick house, kitchen and out-houses. Id. at 408. After taking possession of the property, he sued the defendant, a lessee of the neighboring property owner, for damages to the house and out-buildings caused by defendant’s operation of an ice house. Id. The trial court’s judgment in favor of the plaintiff was reversed on appeal, with the court noting:
It is true, that the purchaser of property is presumed to purchase all actions appurtenant to the property, and necessary to its perfect enjoyment; but as to damages actually suffered before the purchase, we know of no other principles governing the case than those referrable to this general provision of the code, that “every act of man that causes damage to another obliges him by whose fault it happened to repair it.” It is a mere corollary, that the reparation must be made to him who suffered the injury. And the principle is strikingly illustrated by this case. The plaintiff, after possessing the property twenty months, claims one-third more damages than he gave Mrs. Springer for his lot with all the buildings and improvements. This leads to the impression, that the modicity of the price he gave for the premises may, perhaps, be attributed to their dilapidated and dangerous situation, on account of the erection of the ice house and other causes. It is impossible, from the law, to concur with the district court, that these damages, which probably caused the moderate price given for the house and kitchen, |3should be a source of profit to the purchaser, who had a perfect knowledge of their existence when he purchased.
Clark, 6 La.Ann. at 409.
The rule first announced in Clark has been followed consistently in this court’s jurisprudence. It is premised on the idea that the purchaser is not the party damaged by the tortious conduct; rather it is the seller who has suffered damage in the form of the reduced price received for the property: “The general principle, we think, is that a buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sales price.” Prados, 329 So.2d at 751. The subsequent purchaser rule is, therefore, nothing more than the jurisprudence’s common sense approach to situations where known or overt conditions of immovable property result in a diminution in value that in turn results in a lower price paid for the property. The jurisprudence recognizes that the purchaser, who receives the benefit of the diminution in value, suffers no loss and, therefore, no damage.
The rule has roots in French civilian tradition. As explained by Aubry and Rau in their discussion regarding what rights transfer in a sale of property:
*286 There is no doubt that an action for rescission or in damages because of circumstances occurring before the sale such as changes in the premises or an unauthorized assignment of the lease, is not transferred to the buyer. But an action on grounds of excessive deterioration should pass on to the buyer, at least if this circumstance was not taken into account when the sales price was set. [Emphasis added; footnotes omitted.]
2 Aubry & Rau, Louisiana Civil Law Translations: Droit Civil Francais § 176, pp. 76-77 (7th ed.1971). See also, Id., at n.6 (“This solution presupposes that the deterioration has been taken into account when setting the sales price. Otherwise the opposite decision would be justified.”)
The majority opinion goes to some length, in tracing the origins of the subsequent purchaser rule, to discount the idea that application of the doctrine hinges [4on the overt or known characteristic of the damage. Thus, it recites that the rationale of Clark does not indicate a requirement that the damage be overt. Eagle Pipe and Supply v. Amerada Hess Corp., 10-C-2267, 10-C-2272, 10-C2275, 10-C-2279, and 10-C-2289, op. at 265-66 (October 2011). However, Clark was not a case in which the damage to the property was latent or hidden. As a result, it was unnecessary for the Clark court to comment on whether the rule should be extended to cases of latent damage. Had it attempted to do so, its statement in that regard would have been dicta. The majority opinion similarly distinguishes Prados on grounds that the presumption that the buyer is aware of the overt condition of the property and takes that condition into consideration in agreeing to the sales price is discussed in a paragraph on accessory rights. Eagle Pipe, op. at 272-73. Ultimately, however, this is a distinction without a difference, as the key to the holding in Prados is revealed in the single statement, quoted by the majority: “The right to damages accrued to the lessor prior to the sale.” Prados, 329 So.2d at 751. That right accrued before the sale because before that time the damages were obvious, and their existence interfered with the owner’s “use, enjoyment or disposal of the property,” in that the owner received a reduced price for the property, and thereby incurred damages.
Given the common sense underpinnings of the subsequent purchaser rule, it is not surprising that it has been applied by this court thus far only in cases where the damage to the real property has been overt. There is simply nothing in the rationale underlying the doctrine that supports its extension to hidden or latent injuries to property. Indeed, adoption of the majority’s position in this case will result in precisely the situation then-Justice Tate counseled against in his dissent in Prados: a former owner with a right of action but no cause of action (because having received full value for the property, the former owner has suffered no damage) and a present [.¡¡owner with damage, and a cause of action, but no right of action. Prados, 329 So.2d at 752 (Tate, J., dissenting). This is the seemingly absurd result produced by applying a rule that simply was never contemplated or designed to apply to hidden or latent conditions.
Indeed, on the single prior occasion in which this court has been called upon to answer the precise question presented here, i.e., whether a landowner whose property was damaged as a result of hidden contamination prior to purchase has a right of action against the defendant/tort-feasor to recover for damages to the property, or whether this right belongs solely to the owner of the land at the time of damage and does not transfer to the new owner absent a specific stipulation, the *287 court has answered that issue favorably to the subsequent owner, finding a right of action in favor of the subsequent purchaser. Hopewell, Inc. v. Mobil Oil Co., 00-3280 (La.2/9/01), 784 So.2d 653. While the brief per curiam in Hopewell is, admittedly, a bit obtuse, the bottom line is that in the per curiam this court acknowledged a right of action in favor of a subsequent purchaser against a tortfeasor in an action similar to the one asserted here, refusing to extend the subsequent purchaser rule to a case involving latent damage, unknown to either the seller or purchaser.
In my view, the central problem with the majority opinion is the false dilemma on which it is based. According to the majority’s reasoning, either the right to recover for damage to immovable property is a personal right, in which case the subsequent purchaser rule applies to deprive the plaintiff in this case of a right of action, or it is a real right that is transferred with the sale of the property. This approach ignores the third approach to the issue, the one adopted by the court of appeal.
| (¡In its opinion on rehearing, the court of appeal recognized that the right to recover for damages to immovable property is a personal right belonging to the property owner at the time the damage occurs. However, it examined in the context of La. C.C. art. 2315, the fountainhead of tort responsibility in Louisiana, when injury/damage occurs and a resultant cause of action for property damage arises. This single issue — when the damage occurs and who suffers that damage — holds the key to resolving this case.
Under Louisiana law, for a negligence cause of action to accrue, three elements are required: fault, causation and damages. Owens v. Martin, 449 So.2d 448, 450 (La.1984). “Thus, a sine qua non for accrual of a cause of action is damages.” Cole v. Celotex Corp., 599 So.2d 1058, 1063 n. 15 (La.1992). In Louisiana, “damage” to real property is typically measured by the difference between the value of the property before and after the harm. Roman Catholic Church of the Archdiocese of New Orleans v. La. Gas Service Co., 618 So.2d 874 (La.1993). Consequently, a seller who receives fair market value for real property with a hidden or latent defect is not “damaged” by the condition of the property. This seller has experienced no pecuniary loss. However, pecuniary loss is a necessary predicate to the award of compensatory damages for property damage. See, Restatement (Second) of Torts § 906 (1979) (“Compensatory damages that will not be awarded without proof of pecuniary loss include compensation for (a) harm to property_”).[2] Therefore, in the context of tortious injury to property, the relevant “injury” is the loss of use and resulting loss of value and this injury is not incurred by the landowner at the time of the tortious conduct, but by the landowner at the moment the injury is (or should be) discovered.
l7The majority opinion, far from undercutting this idea, actually supports it. According to that opinion, damage to property occurs when there is a disturbance or interference with the owner’s right to use, enjoy, or alienate the property. Eagle Pipe, op. at 275-76. In the case of hidden damage, which is unknown to either seller or purchaser at the time of a sale, the only landowner who sustains an interference with his use, enjoyment, or alienation of the property is the owner of the property at the time the hidden damage is discovered.
*288 As the majority opinion points out, the civil code draws a distinction between apparent and non-apparent damage. It does so in the context of the redhibition articles, La. C.C. arts. 2520, et seq.; and it does so in the context of prescription, expressly adopting a discovery rule in La. C.C. art. B498.[3] Indeed, La. C.C. art. 3493 conditions the commencement of prescription on knowledge, and further links that knowledge to the owner of the immovable at the time such knowledge is, or should have been, acquired. In its linkage, the article implies that it is the owner at discovery who possesses the cause and the right of action.
Again, as the majority opinion points out, in Louisiana, there are only two sources of law — legislation and custom— and of the two, legislation is the superior source of law. Eagle Pipe, op. at 256, citing La. C.C. arts. 1, 3 and Doerr v. Mobil Oil Corp., 00-0947, p. 13 (La.12/19/00), 774 So.2d 119, 128. Judicial decisions are not intended to be an authoritative source of law. Doerr, 00-0947 at 13, 774 So.2d at 128. In the provisions of the civil code can be found broad principles which are intended to be extended and applied to different factual circumstances to formulate |sa coherent body of law. Louisiana C.C. art. 3493, a written provision of our law, specifically refers to the owner of immovable property and explicitly links the commencement of prescription to knowledge of damage. Implicitly, this article recognizes a right of action in the owner of the immovable at the time damage is or should have been discovered. I believe that it is this codal provision, rather than the expansion of a jurisprudential rule, which must serve as guidance in this case. Drawing upon that codal provision, I believe that it is proper to conclude, as did the court of appeal on rehearing, that in the case of latent or unknown damage to property, the cause of action arises upon actual or constructive knowledge, and the right of action belongs to the property owner at the time of that discovery.[4]
Ultimately, then, the majority’s analysis of the issue presented in this case, while exhaustive and detailed, is one with which I must respectfully disagree. I do not believe that the subsequent purchaser rule, which has previously been applied by this court only in cases of overt injury to property where the injury has been accounted for in the reduced price paid for the property, can or should be expanded to cases of latent and unknown injury so as to deprive the subsequent landowner who discovers the injury of a right of action, especially where, in the one case to raise the issue prior to the present one, Hopewell, the court refused to do so.

. See, La. C.C. art. 1764, cmt. (0 (1984).

. The Restatement’s formulation of the measure of damages for injury to immovable property was cited with approval by this court in Roman Catholic Church, supra.

. La. C.C. art. 3493 provides:
When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.

. Any other interpretation would render the provisions of La. C.C. art. 3493 meaningless, because in the case of latent damage, which does not manifest itself until after a sale, the right to recovery would be extinguished before prescription could even commence.