WEIMER, J.,
assigns additional reasons for his dissent.
| ]I feel it necessary to respond to certain comments made in the additional concurring reasons which I fear demonstrate a misunderstanding of the dissent and its underlying principles.
At the heart of that misunderstanding is the concurrence’s suggestion that the dissent, in contrast to the plurality opinion, is not grounded in “basic property and obligations law.” To the contrary, the dissent is firmly rooted in articles of the Civil Code, particularly, La. C.C. arts. 2315 and 3493.
The issue on which this court granted writs can be simply stated: whether a purchaser of property has a right to sue for damages to the property resulting from tortious conduct that occurred prior to the purchase, where the damage was not overt. As my dissent points out, prior to the plurality opinion in this case, the subsequent purchaser rule (a rule of jurisprudential creation) has never been applied to a case of latent or hidden damage to property. In an attempt to justify extension of the rule to hidden damage, the plurality goes to great lengths to 1 discount the idea, announced in Clark v. J.L. Warner & Co., 6 La.Ann. 408 (La.1851), and reiterated in Prados v. S. Cent. Bell Telephone Co., 329 So.2d 744 (La.1976) (on rehearing), and, indeed, in a litany of decisions applying the subsequent purchaser rule, that an underpinning of the rule is the legal principle that for a negligence cause of action to accrue, three elements are required — fault, causation, and damage — and, in the case of overt damage to property, the purchaser is not the party damaged by the tortious conduct, but rather, the damaged party is the seller, who has suffered damage in the form of the reduced price received for the property. Yet, (and this bears reiteration) this is precisely what the Clark decision recognized when it held:
It is true, that the purchaser of property is presumed to purchase all actions appurtenant to the property, and necessary to its perfect enjoyment; but as to damages actually suffered before the purchase, we know of no other principles governing the case than those referrable to this general provision of the code, that “every act of man that causes damage to another obliges him by who fault it happened to repair it.” It is a mere corollary, that the reparation must be made to him who suffered the injury. And the principle is strikingly illustrated by this case. The plaintiff, after possessing the property twenty months, claims one-third more damages than he gave Mrs. Springer for his lot with all the buildings and improvements. This leads to the impression, that the modicity of the price he gave for the premises may, perhaps, be attributed to their dilapidated and dangerous situation, on account of the erection of the ice house and other causes. It is impossible, from the law, to concur with the district court, that these damages, which probably cause the moderate price given for the house and kitchen, should be a source of profit to the purchaser, who had a perfect knowledge of their existence when he purchased. [Emphasis added.]
Clark, 6 La.Ann. at 409. And, it is the precise principle that the majority in Pra- *292 dos echoed when it concluded that in Pra-dos, where the damages were overt: “The right to damages accrued to the lessor prior to the sale.” Prados, 329 So.2d at 751.
l3The plurality opinion posits that a proper interpretation of Clark and Prados hinges on a recognition that the “personal right of the property owner arises because his real rights in the ownership of the property have been disturbed — his use, enjoyment or disposal of the property.” Eagle Pipe and Supply v. Amerada Hess Corp., 10-2267, 10-2272, 10-2275, 10-2279, 10-2289, op. at 264 (La.10/25/2011). But that opinion fails to explain, and the additional concurring reasons offer no suggestion as to how, in the case of hidden or latent property damage, the “real rights” of the property owner at time of the tor-tious conduct — his right to use, enjoy or dispose of that property — are disturbed when he is able to sell, or dispose of the property, at full value, undiminished by the effects of the hidden damage.
In the additional concurring reasons, two full pages are devoted to an attempt to undercut any notion that the holding in Prados hinges on the overt or known characteristic of the damage. Thus, the concurring reasons insist that Prados ’ statement that “[t]he general principle, we think, is that a buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sales price,” is directed solely to a discussion of accessory rights that was “rejected.... as applicable” to the case.
While it is true that the majority in Prados held that the right to damages accruing prior to the sale was not an accessory to the sale, in doing so, it cited with approval Aubry and Rau’s discussion of what should happen if the deterioration, or damage, had not been accounted for in the sales price.
The point which is not acknowledged in the additional concurring reasons is that Prados is a case in which the property damage was overt, and there is nothing in that opinion that supports its extension to a case involving latent or hidden 1¿damage, except the majority’s citation to Aubry and Rau, wherein, it is suggested, the “opposite decision would be justified.” [1]
At any rate, what the additional concurring reasons fail to address is the application of basic principles of negligence law to this case. The articles on redhibition are not the only codal source of obligations and are not exclusive. La. C.C. art. 2315 declares that “[ejvery act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” As this court has recognized, a logical corollary of this rule is that reparation must be made to him who suffered the injury. Clark, 6 La.Ann. at 409. In other words, it is the person who sustains damage who possesses the right of action under La. C.C. art. 2315 for reparation of that damage.[2] In the case of damage to property, an examination of when damage occurs, and a cause of action arises, is not, as the concurring reasons suggest, a case of the “tail wagging the dog,” but is crucial to an understanding of who is damaged and *293 thereby possesses the right to sue for reparation of that damage.
The Louisiana Civil Code recognizes, in the context of damage to property, that damage may remain hidden for some indeterminate period of time. It specifically takes into account situations such as the present, where long-term contamination may remain undetected. It does so by expressly incorporating a discovery rule which marks the commencement of prescription “from the day the owner of the immovable acquired, or should have acquired, knowledge of the Rdamage.” La. C.C. art. 3493. This linkage of the right to commence an action with the owner of immovable property at the time knowledge is obtained is basically a reiteration and reaffirmation of the declaration in La. C.C. art. 2315 that every act of man that causes damage to another obliges him by whose fault it happened to repair it, and the corollary principle, that reparation must be made to him who suffered the injury, that person being the landowner at the time the damage becomes manifest. To hold otherwise is to hold that the property owner at the time of the tortious conduct has a personal right of action against the tortfea-sor, even though he does not know about it, and to effectively render that right of action, in the case of overt or hidden damage, meaningless.
In the final analysis, while the concurring reasons imply that the dissent improperly supplies a right of action in the absence of legislative enactments supporting same, it is clear that the dissent is grounded in codal authority. To the extent it is suggested that the sole remedy of the subsequent purchaser lies in redhibition or under the Louisiana Conservation and/or Environmental Quality Acts, it ignores La. C.C. art. 2315. And, to the extent the concurring reasons suggest that applying the broad principles of Article 2315 to recognize a right of action in the property owner at the time damage becomes manifest creates a species of “im-prescriptible torts,” it remains obdurate in its refusal to acknowledge the operation of La. C.C. art. 3493. Louisiana C.C. art. 3493 commences prescription at actual or constructive knowledge. That such knowledge may not be attained for over twenty years does not render a tort “imprescrip-tible,” it simply acknowledges reality — that some forms of property damage can be insidious and elusive. There is no practical or legal difference between a landowner who holds onto his land until hidden damage is discovered |fiand one who purchases at full value, ignorant of the latent injury. Both are equally damaged at the point of discovery. Thus, a codal provision, and not the dissent, dictates prescription will not commence until knowledge is, or should have been, acquired.
LOBRANO, J., ad hoc, joins in the additional reasons for dissent by Justice WEIMER.

. To die extent the additional concurring reasons imply that an introductory sentence, omitted from the Aubry and Rau quote in die dissent, was purposefully omitted to mislead the reader as to the true meaning of the paragraph, it errs. The first sentence is redundant and adds nothing to the discussion.

. Unless, as exemplified in La. C.C. art. 2315.2, the legislature chooses to limit the class of persons entitled to bring an action under the article. Neither the plurality nor concurring reasons suggests that such a limitation has been adopted by the legislature in this case.